LUCILE DIX, Minor by Next Friend, GEORGE M. YOUNGER, Respondent, v. ELIZABETH MARTIN, Appellant.

### Kansas City Court of Appeals, May 5, 1913.

1. **DAMAGES: Assault: Loco Parentis.** Plaintiff, a minor and an orphan, sued to recover damages for an assault on her by defendant. The latter tied her feet and hands and cruelly beat and whipped her. *Held*, that the assault was wicked and criminal and, assuming that defendant stood in the relation of a parent to plaintiff, she should answer for the damages resulting from such excessive punishment.

2. **PARENT AND CHILD: Liability of Parent.** Where a person assumed toward a child, not his own, a parental character, holds the child out to the world as a member of his family toward whom he owes the discharge of parental duties, he stands *in loco parentis* to the child and his liability is measured by that of the relationship he thus chooses to assume.

Appeal from Cooper Circuit Court.—*Hon. John M. Williams*, Judge.

AFFIRMED CONDITIONALLY.

*John Cosgrove* and *Daniel W. Cosgrove* for appellant.

(1) The trial court proceeded throughout on the theory that defendant did not stand *in loco parentis* to the plaintiff. This was an error and instruction

Nos. ''a'' and 1 should not have been given at the request of the plaintiff.  A person assuming the parental character and discharging parental duties is a person *in loco parentis*.  19 Am. & Eng. Ency. Law (2 Ed.), p. 518.  (2) A stepfather who takes the children of his wife by a former marriage into his family and holds them out to the world as members of his family stands *in loco parentis*. Eickhoff v. Railroad, 106 Mo. App. 541; Academy v. Bobb, 52 Mo. 357.  (3) The grandparents of the plaintiff voluntarily surrendered the care and custody of plaintiff to the defendant for the term of plaintiff's minority according to the defendant's testimony, and the grandparents could not revoke the agreement which was fairly entered into, unless the welfare of the plaintiff demanded it.  Cunningham v. Barns, 37 Wis. 746, 38 Am. S. R. 57.  (4) Instructions six and seven asked by the defendant should have been given and it was error to refuse them.  The relation of parent and child existed between plaintiff and the defendant, and conferred upon the defendant a lawful right to correct the plaintiff.  State v. Koonse, 123 Mo. App. 662, 663.  (a) The defendant was not liable for the infliction of punishment but the excess which constitutes the offense. Johnson v. State, 2 Humphreys (Tenn.), 283, 36 Am. Dec. 322; State v. Jones, 95 N. C. 588, 59 Am. R. 282; 2 Am. & Eng. Ency. Law (2 Ed.), p. 962.  (5) The damages are excessive and are the result of passion and prejudice.

*W. F. Johnson* and *W. G. Pendleton* for respondent.

(1) A contract for the surrender of the care and custody of a child, made by the father or person *in loco parentis*, is held to be void as against public policy —is revocable.  Matter of Clements, 78 Mo. 352; Weir v. Morley, 99 Mo. 484; Matter of Berenice S. Scarritt, 76 Mo. 584; 21 Am. & Eng. Ency. Law (2 Ed.), p. 1039; 6 Am. & Eng. Ann. Cas., p. 939.  (2) Whatever the

relation might have been that existed between the defendant and the plaintiff, the defendant was liable for unreasonable, cruel and excessive punishment. State v. Koonse, 123 Mo. App. 655; Cooley on Torts (2 Ed.), 830; West v. Forrest, 22 Mo. 344; Holke v. Hermann, 87 Mo. App. 125; Haycraft v. Grigsby, 88 Mo. App. 361. (3) The vice of appellant's refused instruction numbered 5 is glaringly apparent—in this, that it instructs the jury that if they believe from the evidence that the defendant acted in good faith, etc., she should be acquitted, notwithstanding the severity or brutality of the chastisement. This is counter to the authorities quoted by the appellant and is in the teeth of the decisions of this, and other, States. State v. Koonse, 123 Mo. App. 663; Haycraft v. Grigsby, 88 Mo. App. 361; Landers v. Seaver, 32 Vt. 114, 76 Am. Dec. 156. Excessive punishment is a question of fact for the jury. Hinkle v. State, 127 Ind. 490; Johnson v. State, 2 Humph. (Tenn.) 283; Fletcher v. People, 52 Ill. 396; Patterson v. Nutter, 78 Me. 509; Classon v. Pinks, 69 Neb. 278.

JOHNSON, J.—Plaintiff, a minor, sued by her next friend to recover actual and punitive damages for an assault alleged to have been made upon her by defendant on August 12, 1911. Defendant admits having whipped the child on that date and endeavors to justify the act on the ground of parental right. Verdict and judgment were for plaintiff for eight hundred dollars actual, and two hundred dollars punitive, damages and after unsuccessfully moving for a new trial and in arrest of judgment, defendant appealed.

Deprived by death of both parents plaintiff, who was seven or eight years old, and her younger sister went to live with their maternal grandparents in Sedalia. Her grandfather who appears in this action as her next friend was a laboring man but his health was good and his wages sufficient to support his family

comfortably. He testified that he and his wife assumed the relationship of parents to the orphans and purposed to rear and educate them. Shortly after they became members of his family and before the beginning of the summer season defendant, who lived with her husband on a farm in Cooper county, called on the grandparents at their home and asked that plaintiff be permitted to live with her during the summer. She and her husband were a childless old couple living by themselves, her husband an invalid and she a rheumatic cripple. She desired the services and companionship of plaintiff for her husband and herself and spoke about adopting her but the grandparents dismissed the suggestion by saying that they intended to rear the children themselves and "would live on bread and water before they would separate the children." They allowed defendant to take plaintiff to her home for the summer on the understanding that she would be returned in the fall in time to go to school. The substance of the testimony of defendant is that she was given the custody of plaintiff with the understanding that she would adopt and rear the child as her own. This evidentiary dispute relates to the issue of whether defendant stood *in loco parentis* to plaintiff and had a right to administer necessary corporal punishment for her proper correction or was in the position of one wrongfully retaining the custody of an infant in defiance of the wishes and rights of those who rightfully stood in the place of the infant's natural parents.

In the following September the grandfather requested defendant to return the child, and, on her failure to do so, went to her home in Cooper county and made demand in person. The demand was refused and he was unable even to see his grandchild. He left and shortly after returned with an officer and renewed the demand which again was refused by defendant who would not admit the unwelcome callers to her house. The grandfather being at the end of his resources re-

turned home and, against his will, suffered plaintiff to remain with defendant until the occurrence of the events that gave rise to this action. Defendant does not dispute the facts just stated but says that her refusal of the grandfather's demand was prompted by the facts that it was a breach of their original agreement and that plaintiff evinced a strong disinclination to go back to her grandparents.

Plaintiff lived with defendant for three years as a sort of servant. She waited on the invalid husband of defendant until his death which occurred in a year from the beginning of her service and after that event she lived alone with defendant as her companion and servant. Defendant provided her with sustenance and clothing, was kind to her and treated her as a companion and social equal but did not send her to school and on account of her own crippled condition kept her at home and employed her in domestic service.

The evidence of plaintiff shows that in the evening of August 12, 1911, defendant, for some real or imaginary offense on the part of plaintiff, committed a brutal and cruel assault on her. She tied the child's hands and feet with ropes and then beat her on the back with her fists and with a buggy whip from which the small end or lash had been broken off. After the whipping the child's back from neck to waist was covered with bruises and welts from which blood and water oozed. The following Monday (the assault was on Saturday) plaintiff went to the house of their nearest neighbor and asked protection. They gave her an asylum and shortly after took her to a justice of the peace in a nearby town. He, his wife and others examined plaintiff's back and their testimony corroborates that of one of the witnesses who stated that "she had been whipped from her shoulder down to her waist by some one, and it seemed just like she was black and blue, something like a jelly in some places, and some places looked like water oozing and maybe a little blood but

it had begun to dry." A criminal prosecution for assault followed, defendant pleaded guilty and was fined one hundred dollars.

Defendant denies that she tied the child's hands and feet or that she beat her with a buggy whip from which the small end had been broken off, but the wounds proclaimed that a bludgeon too heavy and terrible for tender flesh to .bear had been wielded with merciless force. That defendant was actuated by blind fury is disclosed in her own admission that "I whipped her harder really, men, than I thought I would, but it was just like my hand was tied—I don't know why." The anger of defendant was caused, she says, by the conduct of plaintiff in slipping off to their neighbor's house and playing in the yard with boys when, owing to the hot weather, she had nothing on but a thin dress. The child was only eleven years old and was merely romping in an excess of youthful exuberance but defendant, deeming such conduct shocking to modesty and decency and deserving severe correction, haled the child home and beat her in the manner described.

Defendant testified on cross-examination: "Q. Didn't you say awhile ago that you told her that if she ever acted that way again, go among boys with that slip on, you would tie her hands and feet and whip her until she couldn't stand up? A. Yes, sir; I threatened to tie her hands and feet and whip her until she couldn't stand up if she ever do such a dirty trick as that again. Q. Didn't you show her the rope? A. It was hanging there."

Plaintiff sustained no permanent injury but her back was two weeks or more in healing and she suffered great physical and mental pain from the assault.

In one of the instructions given at the request of plaintiff the jury were told to return a verdict for her if they believed from the evidence "that the grandfather of the infant plaintiff with whom she had lived

after the death of her parents permitted her to go and live with the defendant at the request or solicitation of the defendant, merely to serve the defendant and her sick husband, and that the grandfather did not give the plaintiff to the defendant, and that the defendant promised the grandfather that the infant plaintiff would be returned to him whenever requested by him; and that later the grandfather requested the defendant to let him have the infant plaintiff, and that the defendant refused to do so, but kept her against the grandfather's consent," etc.

The theory of this instruction is that the facts stated in its hypothesis are inconsistent with the inference that defendant stood *in loco parentis* towards plaintiff and that in the absence of such relationship defendant had no right to inflict corporal punishment upon plaintiff whether such chastisement were moderate or immoderate. Counsel for defendant attack this instruction on the ground that it assumes as a proved fact "that defendant did not stand *in loco parentis* to the plaintiff." This objection is not well grounded. The instruction deals with the question of the nature of the relationship between the parties as embracing an issue of fact, and we think the facts included in the hypothesis would be incompatible with the existence of a relationship akin to that of parent and child. We recognize the rule that where a person assumes towards a child not his own a parental character, holds the child out to the world as a member of his family towards whom he owes the discharge of parental duties, he stands *in loco parentis* to the child and his liability is measured by that of the relationship he thus chooses to assume. [Academy v. Bobb, 52 Mo. 357; Eickhoff v. Railway, 106 Mo. App. 541, 19 Am. & Eng. Ency. of Law, 518.]

But the evidence of plaintiff shows that defendant obtained the custody of plaintiff from her grandparents who had assumed the relations and duties of pa-

renthood towards her, for the purpose of obtaining the services of plaintiff for a brief time and without any thought of establishing a closer tie than that of mistress and servant. The refusal of defendant to acknowledge her obligation to surrender plaintiff to her grandparents at the end of the period of her service did not alter the relationship to the advantage of defendant. One cannot create a right out of his own wrong. Nor did the fact that plaintiff's grandfather refrained from appealing to the courts for redress change the legal rights of the parties. He explained that poverty prevented him from taking that course but whatever the reason, the fact remained that he continued to be *in loco parentis* to plaintiff, and defendant remained in the position of a wrongdoer who forcibly kept possession of the infant against the consent of him who had established the relation of parent and was entitled to have custody of her. The most that may be said under this evidence in favor of the position of defendant is that the relation of master and servant existed between her and plaintiff. The rule obtaining in this State is that a master has no authority to chastise his servant, no matter how flagrant his violation of duty may be. [2 Am. & Eng. Ency. of Law (2 Ed.), 965.]

There is no error in the instruction nor do we find any in another instruction given at the request of plaintiff which is based on the idea that if plaintiff's grandfather had agreed to give defendant the custody of the child during her minority he had a right to revoke the agreement. Except as modified by statute the general rule is that a parent cannot irrevocably divest himself of the right of custody over his minor child. Despite his contract to that effect the parent will be allowed to recall the right where the welfare of the child thus would be promoted. [Weir v. Marley, 99 Mo. 484; Matter of Berneice S. Scarritt, 76 Mo. l. c. 584; Matter

of Clements, 78 Mo. 352.] And this rule applies to one who stands *in loco parentis.* [21 Am. & Eng. Ency. of Law (2 Ed.) 1039.]

Other instructions given at the request of plaintiff present the issue to the jury of whether the punishment given plaintiff was so unreasonable, cruel and excessive as to constitute an assault regardless of the nature of the relationship of the parties. We find the law properly declared in these instructions. One who assumes to take the place of a parent has a right to inflict reasonable corporal punishment for misconduct of the child, but he has no right to subject the child to inhuman, unusual and torturing castigation and if he does he becomes liable to answer to the child in damages as for a malicious assault. [Haycraft v. Grigsby, 88 Mo. App. 354.] The evidence shows beyond question that defendant, in her furious wrath over what amounted to nothing more than a breach of decorum, subjected the child to an unusual form of punishment of such severity and brutality as to shock the conscience of any reasonable and humane person. [State v. Koonse, 123 Mo. App. 655.] The assault was wicked and criminal and, assuming that defendant stood in the relation of a parent to plaintiff she should answer for the damages resulting from such excessive punishment.

Claim is made that the verdict as to actual damages is excessive. In such cases juries are allowed a wide discretion in the assessment of damages and are entitled to take into consideration, as elements of the plaintiff's damage the physical and mental pain and suffering and the humiliation resulting from the assault. Considering all of the facts and circumstances of the case and giving due effect to the rules we have stated we think the verdict is too large and that the ends of justice would be better served by compelling a remittitur of two hundred dollars and taxing the costs

of the appeal against the defendant. Accordingly the judgment will be affirmed on condition that within ten days the plaintiff shall enter a remittitur in the amount stated and the costs of the appeal will be taxed against the defendant.

It is so ordered. All concur.