Hubert Nudd, Administrator of Estates of Spiros Mat-
soukas et al.; and William Matsoukas, Jr., by His
Next Friend Hubert Nudd, Appellants, v. William
Matsoukas, Sr., and David L. Thill, Appellees.

Gen. No. 46,491.

First District, Second Division.

June 28, 1955.

Released for publication September 13, 1955.

John G. Phillips, of Chicago, for appellants.

Ross, Berchem, Schwantes & Thuma, of Chicago, for appellee William Matsoukas, Sr.; Rosen, Francis &

■■■■■■■■■■■■■■■

Cleveland, of Chicago, for appellee David L. Thill; Sidney A. Wilson, and John F. Rosen, both of Chicago, of counsel.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

Leave to appeal to this court was granted, on petition of the plaintiffs, from orders entered in the Superior Court of Cook county dismissing, on motion of the defendants, two wrongful death actions brought in behalf of a minor against his father by Nudd as next friend. Each of these causes of action is set up in the same complaint.

The facts as set out in the pleadings are that William Matsoukas, Sr., one of the defendants, on October 26, 1952 was driving a vehicle on a public highway. With him in the automobile were Elizabeth Matsoukas, his wife, Mary Mead Nudd, his sister-in-law, and his two children, Spiros Matsoukas and William Matsoukas, Jr., both minors under the age of seven. It was alleged in the complaint that he "wilfully, recklessly and wantonly" drove his vehicle at an excessive rate of speed on a foggy night, when traveling was difficult because of the wet pavement; that he went through a stop light; that the automobile driven by him collided with one driven by David Thill, the other defendant, and as a result of this collision Elizabeth and Spiros Matsoukas and Mary Mead Nudd were killed, and the other minor, William, Jr., was severely injured, sustaining a skull fracture. Hubert Nudd was appointed as administrator of the estates of the three deceased persons and he filed suit under the wrongful death statute. In a separate count of the complaint, William Matsoukas, Jr., the surviving minor, through Hubert Nudd, as next friend, proceeded against William Matsoukas, Sr., and David Thill, alleging negligence on the part of Thill and willful and wanton con-

duct on the part of Matsoukas, as in the other counts of the complaint.

In all the counts it is alleged that defendant William Matsoukas on the day of the accident maintained liability insurance for himself in the operation of his vehicle; that said defendant has assigned, transferred and relinquished his right to recover for monies expended, etc., together with any right, interest or benefit that he may derive directly or indirectly from any such claim for damages made on behalf of his living son, as shown by a statement of the defendant Matsoukas attached as Exhibit No. 1 to the complaint. It is not indicated that a written assignment had been made.

Motions to dismiss the counts of the complaint which set up actions arising out of the deaths of Elizabeth Matsoukas and Spiros Matsoukas were filed by both defendants, and a motion to strike the cause of action on behalf of William Matsoukas, Jr., through his next friend, was filed by the defendant William Matsoukas, Sr. These motions were sustained, leaving pending the action arising out of the death of Mary Mead Nudd against both defendants, as well as the action of the surviving minor against defendant Thill. The motions to dismiss the causes of action founded on the deaths of Elizabeth Matsoukas and Spiros Matsoukas were sustained on the ground that the defendant William Matsoukas was a beneficiary and hence the action was barred. The motion to dismiss the cause of action against defendant Matsoukas arising out of the injuries of William Matsoukas, Jr., was sustained on the ground that his father, William Matsoukas, Sr., was a defendant, and the maintenance of such a suit is against public policy. The plaintiffs stood on their complaint and appealed.

There are two issues presented to this court: (1) Can the administrator of an estate maintain a suit for tort under the wrongful death statute where one of the

surviving next of kin is made a principal party defendant? (2) Can a minor sue his father in tort where such father maintains liability insurance and waives his interest in any recovery?

The actions arising out of the deaths of Elizabeth Matsoukas and Spiros Matsoukas were based upon the Wrongful Death Act of this State (Ill. Rev. Stat. chap. 70, pars. 1 and 2 [Jones Ill. Stats. Ann. 38.01, 38.02]). The action is purely statutory in origin and was designed by the legislature to create a cause of action in the name of the administrator for the pecuniary loss which the widow and next of kin may have sustained by reason of the death of the injured person, and the damages, under the statute, when collected, are to be distributed to the widow and next of kin according to the rules for distribution of personal property of persons dying intestate. An action brought by a child for damages for injuries suffered through the negligence of a third party is not barred by the contributory negligence of the parents. In an action brought by the administrator of the estate of a deceased child for damages resulting from the death of the child through the negligence of a third party, the contributory negligence of the parent is a bar to the action. Hazel v. Hoopeston-Danville Bus Co., 310 Ill. 38; Ohnesorge v. Chicago City Ry. Co., 259 Ill. 424; Chicago City Ry. Co. v. Wilcox, 138 Ill. 370. "The cause of action is entirely statutory and is a single cause of action. There is no separation of the damages to be assessed by the jury. Their finding is for a single gross amount in an inseparable cause of action, and the contributory negligence of one beneficiary who may be entitled to share in the amount recovered is a defense to the action." Hazel v. Hoopeston-Danville Bus Co., 310 Ill. 38. In Crutchfield v. Meyer, 414 Ill. 210, the court, citing Ohnesorge v. Chicago City Ry. Co., supra, affirmed the rule, stating that while the decedent, being under the age of seven, as a matter of

508

law was not chargeable with contributory negligence, nevertheless contributory negligence of the parents will bar a recovery under the Wrongful Death Act.

Plaintiff-administrator contends that if the minor was suing for damages resulting from permanent injuries negligently inflicted by the defendant as a result of his willful and wanton conduct the plaintiff's claim would not be barred by his own contributory negligence (Walldren Express & Van Co. v. Krug, 291 Ill. 472); consequently since the defendant is charged with willful and wanton conduct his negligence cannot be imputed to the plaintiff in this case. That contention is disposed of in Crutchfield v. Meyer, supra.

■ The plaintiff-administrator argues that the rule in Hazel v. Hoopeston-Danville Bus Co., supra, holding the action to be a single cause of action and that there must be no separation of the damages to be assessed by the jury, should not be held as law today in view of amendments to the Wrongful Death Act. However, that case was decided after the last substantial amendment to the Death Act. The 1949 amendment merely gave an additional right to the administrator to sue for medical, funeral and administration expenses in a case where there was no widow or next of kin entitled to recover. This amendment does not by implication change the rule.

Counsel for the plaintiffs has filed an exhaustive and analytical petition for leave to appeal, which by leave of court stands as their brief in this case and is hereafter referred to as such. In the brief the plaintiff-administrator argues fervently that the rule holding the contributory negligence of the parent in an action under the Wrongful Death Act will bar recovery is logically unsound and that the later cases in the United States support the doctrine that the negligence of one beneficiary in an action for wrongful death does not bar recovery for the benefit of innocent beneficiaries. It is undoubtedly true, as has been said in a

number of cases, that the rule barring recovery is an extremely harsh one, that the courts have generally refused to extend it, have taken every opportunity to whittle it down, and in some cases have partially repudiated it. In 25 C. J. S. Death § 46 it is stated: "Contributory negligence of a beneficiary is generally held to bar an action for death brought by or for the benefit of such beneficiary." In the opinion in the Hazel case the court considered and discussed the authorities from other jurisdictions contra to the rule announced in Illinois. This same argument was there made and overruled by the court.

The plaintiff-administrator also argues that the question raised in the instant case as to the contributory negligence of the father is a matter of first impression and that this court is not bound by the previous decisions. With that contention we cannot agree.

It is true that the Illinois rule as laid down in Hazel v. Hoopeston-Danville Bus Co., supra, has been subject to criticism (38 Ill. Law Rev. p. 259). It is, however, the law of Illinois, and binding upon us, that in an action brought under the Wrongful Death Act the contributory negligence of the parent-beneficiary will bar the action, and the cause of action is inseparable and the jury's finding must be for a single gross amount. This rule relates to inter-family relationship and is a matter of public policy, the control of which rests primarily in the legislature.

The plaintiff-administrator relies upon the case of Welch v. Davis, 410 Ill. 130, in which case a husband shot and killed his wife and immediately thereafter shot and killed himself. The wife left surviving a daughter by her first marriage, who was the sole heir at law and next of kin of the deceased. An action was brought by the administrator of the wife's estate against the executor of the husband's estate. It was argued by the defendant that since at common law the wife could not have maintained an action in tort

against her husband during her lifetime, the administrator could not recover in an action for her wrongful death. The Supreme Court, after calling attention to the fact that this particular question had never been before presented for decision in this State, holds that the disability of the wife to sue her husband is personal and that such disability should not be extended to bar the action brought by the administrator to recover damages for the pecuniary loss suffered by the minor dependent daughter of the wife. The immunity based upon the preservation of marital harmony could there be disregarded, since the marriage had been terminated, the husband and wife both being dead, and the action was brought for the benefit of a third person. That case is not authority for the point urged in the instant case.

The plaintiff-administrator cites Howlett v. Doglio, 402 Ill. 311, in which action the plaintiff sued under the Dramshop Act for damages resulting from the death of her daughter. The court stated that in an action under the Dramshop Act the contributory negligence of the deceased does not bar recovery, while it does in an action brought under the Wrongful Death Act, holding that the Wrongful Death Act and the Dramshop Act have essentially different basic purposes and objectives and are based upon different powers of the State. This case adds nothing to plaintiff's contentions.

In Rost v. F. H. Noble & Co., 316 Ill. 357, also relied on by plaintiff-administrator, where an action for damages for the death of a minor was brought against an employer who had violated the Child Labor Act, the court held that the contributory negligence of the parents, who were beneficiaries, did not bar the action, the court holding that the rule set out in Hazel v. Hoopeston-Danville Bus Co., supra, did not apply, because the right to maintain the action arose solely under the Child Labor Act without regard to the Injuries

511

Act or the rule of common-law negligence. These cases merely indicate that while the court recognizes the rule, it will not extend it beyond its present limits.

The objection to the order dismissing count 4 of the complaint, which was the cause of action brought on behalf of William Matsoukas, Jr., the minor son of the defendant William Matsoukas, Sr., raises the question as to whether or not in Illinois a son can sue his father in an action in tort. In 67 C. J. S. Parent and Child § 61, it is said: "Generally speaking, an unemancipated minor child has no right of action against his parent or a person standing in loco parentis for the tort of such parent or person unless a right of action is authorized by statute. . . ." This rule was first definitely announced in 1891 in the case of Hewlett v. George, 68 Miss. 703, 9 So. 885. The court cited no authorities. This case was followed quite generally by the courts in the United States. In 1895 in Illinois, the case of Foley v. Foley, 61 Ill. App. 577, was decided, and there the court laid down the rule that a child cannot maintain an action in tort against a parent or one in loco parentis to him. In that case also no authorities were cited for the proposition; however, at the time the decision was rendered there were supporting authorities in existence in other jurisdictions. Later, in Meece v. Holland Furnace Co., 269 Ill. App. 164, it was held to be a rule of common law based upon public policy that a minor child cannot sue his father in tort unless a right of action is authorized by statute. In support of this position the court cites cases from other jurisdictions and Foley v. Foley, supra. These cases have not been overruled by any subsequent cases in this State.

Counsel has cited a number of cases from other jurisdictions which indicate judicial dissatisfaction with the rule as announced in Illinois. However, four of the cases cited, Steber v. Norris, 188 Wis. 366, 206 N. W. 173 (1925), Dix v. Martin, 171 Mo. App. 266, 157 S. W.

512

133 (1913), Treschman v. Treschman, 28 Ind. App. 206, 61 N. E. 961 (1901), and Clasen v. Pruhs, 69 Neb. 278, 95 N. W. 640 (1903), are suits allowed to be brought against one standing in loco parentis, not the natural parent, for assaults or unreasonable chastisement of a minor child. Plaintiff also cited the following cases. In Worrell v. Worrell, 174 Va. 11, 4 S.E.2d 343 (1939), the court permitted recovery on the theory that the suit was brought by the minor against the father in his vocational capacity as a common carrier. In Lusk v. Lusk, 113 W. Va. 17, 166 S. E. 538 (1932), suit was permitted on the theory that it was based on the relationship of passenger and carrier, rather than that of parent and child. In Cowgill v. Boock, 189 Ore. 282, 218 P.2d 445 (1950), a suit was brought by the administrator of the estate of a minor child against the administrator of the estate of the child's deceased father for damages caused by the father while driving a truck when intoxicated and with gross negligence. The case was one of first impression in that State. The court held that under their statute, unless the decedent child could have maintained an action against the father for injuries, the present action could not be maintained. The court in its opinion discussed the case of Hewlett v. George, supra, together with other cases pro and con, and reached the conclusion that the rule that an unemancipated minor may not maintain an action for a personal tort against his parents is not absolute in all cases, and that the rule should be modified to allow an unemancipated minor child to maintain an action for damages against his parent for a willful or malicious personal tort. In that case the chief justice and another justice dissent. In their opinion they take the view that the decision of the majority of the court is both illogical and not supported by authority, and that the rule there set out is one which would be impossible to apply in practice and consequently would leave the last state of the law worse than the first.

On behalf of the minor it is urged that since it appears from the allegations in the complaint that the defendant is protected by liability insurance, such action by the parent of itself would constitute an emancipation of the child and so remove the barrier to the suit, and in support of that proposition the case of Dunlap v. Dunlap, 84 N. H. 352, 150 Atl. 905 (1930), is cited. That case was brought by a child injured while in the employ of his parent who carried liability insurance. The court held that the suit was proper. The court based its decision upon the ground that there was a relationship of master and servant between the child and the parent and that the argument that such a suit would be against public policy since it might have a tendency to disturb the family peace was there nonexistent inasmuch as by his employment of the child the father had intentionally surrendered his parental control; also that the father, by taking out liability insurance, removed the barrier to the suit, since the father, because of the insurance, is not only relieved from liability to pay the judgment, but also has taken from him the duty and right to defend the action or to interfere in any way with such defense.

In the case of Norfolk Southern R. Co. v. Gretakis, 162 Va. 597, 174 S. E. 841 (1934), suit was brought by a minor child for injuries suffered in a collision while riding in a car driven by her father who was fully covered by liability insurance. In Virginia evidence of insurance is not permitted to go before the jury, and the court held that the fact that the father carried liability insurance did not create any liability which would not exist were he not insured. In Illinois the courts have repeatedly held that it is improper to inform the jury, either directly or indirectly, that the defendant is insured against liability on a judgment which may be entered against him in the trial of a case. Mithen v. Jeffery, 259 Ill. 372; Smithers v. Henriquez, 368 Ill. 588; Edwards v. Hill-Thomas Lime Co., 378 Ill.

180; Kavanaugh v. Parret, 379 Ill. 273. These cases dispose of the argument that liability insurance carried by the father-defendant would affect the rule.

It is also contended that since the defendant William Matsoukas, Sr., had by his assignment relinquished all his claims, the child was emancipated and the bar prohibiting the son from suing the father for personal injuries removed. A recent case on that subject is Brumfield v. Brumfield, 194 Va. 577, 74 S.E.2d 170 (1953). After stating that an emancipated infant may maintain a tort action against a parent, the court distinguishes between partial and complete emancipation, stating that complete emancipation is "the freeing of the child for all the period of its minority from the care, custody, control and service of its parents, conferring on the child the right to its own earnings and terminating the parents' legal obligation to support it. Partial emancipation frees the child for only a part of the period of minority or from only a part of the parents' rights, or for some special purpose such as the right to its own wages." The court further says: "Since it is the existence of a filial relation that constitutes a bar to the maintenance of an action for negligence by the child against the parent, the emancipation that removes the bar must be complete emancipation by which the filial relation has been terminated." In the case before us, if there was any emancipation at all by the assignment, it was not a complete emancipation and consequently does not remove the barrier to the suit.

The questions concerning the dismissal by the trial court of the two causes of action involve a question of public policy. Counsel for plaintiffs argues that the trend of the decisions today in other jurisdictions is in the direction of abrogating the rule barring the recovery by a beneficiary against a defendant-beneficiary who is guilty of contributory negligence, as well as the rule which renders the father immune from

a suit in tort brought by his minor child. Plaintiffs call attention to the case of Brandt v. Keller, 413 Ill. 503, where our Supreme Court held that the legislative intent evidenced in the Married Women's Act of 1847, (Ill. Rev. Stat. chap. 68, pars. 1 to 21 [Jones Ill. Stats. Ann. 64.01–64.21]), removed the husband's common-law immunity from tort actions instituted by his wife. Within a matter of months after that decision the legislature amended the Married Women's Act making the immunity of the spouse absolutely clear. Ill. Rev. Stat. 1953, chap. 68, par. 1. While it is true that the analogy as to suits between husband and wife and suits between minor children and their parents is not close, the action of the legislature clearly reflects an opposition to enlarging the area of inter-family litigation. As to public policy the legislature is the final arbiter. The Supreme Court of Wisconsin, in Fidelity Savings Bank v. Aulik, 252 Wis. 602, 32 N.W.2d 613, has held that since an unemancipated minor living in the home of his parents may not sue his father for his father's tort, conversely the father is not permitted to maintain an action against the minor for his tort. The court said with reference to permitting actions of this kind: " 'We have such grave doubts as to the wisdom of such a policy that we consider that we, as a court, should not declare it. We consider that such a far-reaching step, so at variance with the common law, should not be taken by this court. "Questions of public policy are primarily for the Legislature." ' "

The plaintiffs urge that this court should change long and firmly established rules of law and declare a new public policy for the State. We believe that such far-reaching questions are primarily for the legislature.

The orders of the superior court are affirmed.

Orders affirmed.

ROBSON and SCHWARTZ, JJ., concur.