Ronald G. LYNCH, b/n/f Edgar S. Carroll, Plaintiff-Respondent,

v.

Fred ROSENTHAL, Defendant-Appellant.

No. 24188.

Kansas City Court of Appeals.

Missouri.

June 7, 1965.

Motion for Rehearing and for Transfer to Supreme Court Denied Oct. 4, 1965.

Robert G. Oberlander, James B. Lowe, Kuraner, Oberlander, Lamkin, Dingman & O'Laughlin, Kansas City, for appellant.

E. E. Thompson, Thomas A. Sweeny, Edgar S. Carroll, Popham, Thompson, Popham, Trusty & Conway, Kansas City, for respondent.

SPERRY, Commissioner.

Ronald G. Lynch, b/n/f, sued Fred Rosenthal for damages because of personal

injuries received when he got his right arm caught in a corn picker operated by defendant. Plaintiff had a verdict and judgment for $10,000.00, and defendant appeals.

Plaintiff was twenty-two years of age when the accident occurred, and twenty-four when the case was tried. He was a single man and lived at the farm home of defendant and his wife and family consisting, originally, of six children. Defendant's wife took plaintiff and his sister out of the State Home for subnormal, or retarded children, at Marshall, Missouri, when plaintiff was twelve years of age. Plaintiff had, at that time, been in the home for about seven years. He could not talk. He had never gone to school and, when defendant's wife attempted to enter plaintiff in school, he was rejected as unsuitable because of his size, age and mental condition. He was never adopted by defendant but lived in the home with the family. He was given room, board, clothing and some spending money and he helped with the farm and household work. He ate at the family table and was treated like defendant's children. Sometimes, he worked for neighbors and for others, but he was never an employee of defendant in a legal sense.

Plaintiff pleaded, in his petition, that, on November 24th, 1962, he was in the employ of defendant; that defendant caused, directed and required him, in the performance of his duties, to assist in the operation of a corn picker on defendant's farm; that he required and directed plaintiff to walk between the corn picker and a wagon which was pulled behind the picker, into which corn from the elevator on the picker was discharged; that plaintiff was required to retrieve and place in the wagon any corn which might fall on the ground instead of into the wagon; that, while so walking, he stumbled on the wet, slippery, and uneven ground and his right arm was thereby caused to be caught in the moving parts of the mechanical corn picker causing severe injuries to his arm; that plaintiff was inexperienced in this work and unfamiliar

with the attendant dangers; that defendant negligently failed to warn him of the dangers and negligently failed to furnish him with a reasonably safe place to work; and that plaintiff was negligently required to walk and work in dangerously close proximity to the exposed moving parts of the corn picker.

The picker used in this operation was self propelled. Defendant, as operator, sat on a seat, high up, so that he could properly steer it and also look back to see if the corn was going into the wagon, which was fastened to the draw-bar on the rear of the picker. There were three prongs on the front of the picker, and two rows of standing corn would come between the prongs, so that the ears would be snapped off and elevated into the shucking mechanism that ran across the picker, thence through the shucking rollers, which were exposed. The mechanism of the picker was operated by the motor. When the shucking process was completed the corn would drop into a slot from which it would be elevated upward and to the rear and, finally, be dropped into the middle of a wagon pulled behind the picker. The wagon was attached to the draw-bar on the rear of the picker by a four foot tongue. The distance between the front of the wagon and the rear axle of the picker, from which the elevator extended upward and to the rear, was about four feet.

When the trial began, plaintiff's counsel advised the court and defendant that plaintiff was mentally subnormal; that his mental capacity was that of a nine or ten year old child; and a next friend was appointed by the court. Plaintiff's counsel caused their client to be examined by a competent psychiatrist so that he could testify as a witness as to plaintiff's mental capacity, and offered to make plaintiff available for such examination by competent physicians of defendant's choosing, which offer was declined.

Defendant testified that plaintiff had been taken from the State institution by

Mrs. Rosenthal when he was twelve years of age; that he, thereafter, lived in defendant's home as a member of the family, and still lived there at the time of the trial; that plaintiff would always do what defendant requested him to do with regard to work around the farm and house; that he directed him to walk behind the picker and throw into the wagon such corn as might fall on the ground; that he did not tell him to walk behind the wagon; that he did not instruct him, in detail, as to where to walk but he thought he would walk behind the wagon; that, when he looked back, plaintiff was walking behind the wagon; that he did not warn him not to get close to the picker, nor that the picker was dangerous, nor did he tell him what caused it to be dangerous; that he knew that plaintiff had to be told, repeatedly, how and what to do and that he soon forgot instructions; that he could not read but could write his name; that he could not remember how much corn to feed the hogs, although defendant's son could efficiently feed the hogs when he was a small boy; that plaintiff could not remember, although he would tell him, to keep the dogs out of the milk when he did the milking; that he was never interested in girls; that he did not drive an automobile or ride a bicycle; that he had a great deal of trouble operating a power lawn mower; that he had gotten his hand injured in a corn picker while helping another person pick corn, although he had been warned, and warned, and warned; that when he looked back, he saw plaintiff standing on the axle of the picker with his right arm caught in the shucking rollers; that he would never know how he got in that position; that, if he had seen him walking behind the picker and in front of the wagon, he would not have permitted it, because it was dangerous for him to do so.

Dr. Lytton, a qualified child psychiatrist, was a witness for plaintiff. He testified to the effect that he examined plaintiff and administered certain tests commonly used in such cases. He gave it as his opinion that plaintiff had the mental capacity of a child of from nine and one half to ten and one half years of age; that he had an I. Q. of 65 as compared to a national average of 100; that he is not mentally ill, just has a low mental capacity; that he is unlike a normal ten year old child in that he cannot use his actual mental ability in a meaningful way; that most ten year olds can ride a bicycle; that, since plaintiff cannot do so, he has a mental level of less than ten years; that he does not have the ability to appreciate the danger of moving machinery, but he can comprehend a warning to stay away from it; that he can not do a simple syllogism; that he is incapable of abstract reasoning; that most ten year olds can tell time but plaintiff cannot; that there are three classifications of subnormal mentality, to-wit: moron, low moron, and idiot; that plaintiff is a low moron; that the extent of his mental incapacity would be apparent to any normal person who might live around him.

Defendant's estranged wife stated that she took plaintiff from the institution because she wanted to "give him freedom"; that she sought to enter him in school but permission was refused because of his age, size and mental condition; that, when plaintiff worked on her father's farm machinery, her father warned him every time he worked on it, of danger, yet he was hurt by a corn picker; that he ran a tractor for a neighbor and drove it into a barn; that, when he fed hogs for defendant, he would sometimes give them enough corn to last four or five days; that defendant would explain to him and yet he would do the same thing again and again; that he could not remember to keep the dogs out of the milk, when milking; that he could not ride a bicycle or drive a car; that he could not properly operate a power lawn mower, that it was constantly broken down; that, while working on a church building project, he was told to burn useless scrap lumber, and

that he burned $400.00 worth of new oak flooring.

Plaintiff stated that defendant told him to pick up corn behind the picker; that he told him to walk behind the picker; that he walked about three feet behind and to the right of the picker. (He also said that he walked twenty feet to the right of the picker). He stated that, as he walked near the rear of the picker, a corn stalk was pulled up and cast against his shins; that he stumbled and fell into the picker; that he caught at a metal shield near the open husking rollers, and his right arm went into the rollers; that he then got up on the draw-bar with his left foot; that defendant did not warn him about walking in close proximity to the picker; that he knew that it was dangerous to get too close to moving parts of machinery.

At the close of the evidence plaintiff asked and was granted leave, over objection, to amend his petition so as to allege as negligence, defendant's failure to warn of the danger of walking in close proximity to the picker and its moving parts. The case was submitted on that specification of negligence. Defendant claims error in permitting the amendment and in denying his application for a continuance to permit time for preparation for refutation of the allegation.

Defendant does not contend that there was not substantial evidence tending to prove the theory upon which the case was submitted. He pleaded in his answer that plaintiff was guilty of contributory negligence and that he assumed the risk. Plaintiff's and Mrs. Rosenthal's depositions had been duly taken and there is nothing in this record to indicate that their testimony, given at that time, differed materially from that which they gave at the time of the trial.

Defendant, himself, was present at the time the injury occurred. He knew the facts of the accident better than anyone except the plaintiff. He had intimately known plaintiff since he was twelve years of age, and knew he was mentally subnormal. His counsel knew that, because of plaintiff's mental condition, defendant was duty bound to exercise ordinary care for the safety of that particular plaintiff, in view of all of the facts. Cathey v. De-Weese et al., Mo., 289 S.W.2d 51, 56, 57. The theory pleaded in the amendment was inherent in the facts and circumstances of this case, form the very time the accident occurred. Defendant was, in effect, put on notice thereof when a next friend was appointed by the court, before the trial began. He knew that plaintiff was examined by a psychiatrist and was informed that he was available for medical examination by competent physicians to be selected by defendant. Defendant was informed, on Wednesday, before the trial ended on Friday, that this amendment would be offered. The evidence in support of the allegation contained in the amendment was admitted without objection. Evidence in support of the allegations of defendant's answer would also tend to disprove the allegations of the amendment.

Defendant offered no evidence as to how the accident occurred except that of his own testimony. There is no suggestion that other evidence on that issue is available. He offered no medical evidence as to the extent of the injuries and does not claim that the verdict is excessive. He offered no medical evidence as to plaintiff's mental capacity although he was afforded ample opportunity to procure such evidence two days before the trial ended, after having learned that plaintiff's mental capacity would be an issue.

■ Permitting the amendment and denying a continuance was within the sound discretion of the trial court. That discretion was not abused in this case. Davis v. Kansas City Public Service Company, Mo., 233 S.W.2d 679, 683; Ethridge v. Perryman, Mo., 363 S.W.2d 696, 703.

■ Defendant contends that there can be no recovery because the injury was

the result of an unintentional tort and that he stands in *loco parentis* to plaintiff. He cites Dix v. Martin, 171 Mo.App. 266, 157 S.W. 133, where this court (135) recognized the established rule that where a person assumes towards a child not his own a parental character, and holds the child out to the world as a member of his family towards whom he owes the discharge of parental duties, he stands in *loco parentis* to the child. We know of no Missouri court decision where the doctrine has been applied to an adult person. Defendant did not plead or instruct on this issue. The evidence as to plaintiff's relationship with the defendant came almost entirely from defendant and from Mrs. Rosenthal. The latter, who was called as a witness by defendant, stated that she took plaintiff from the Home and that she had treated him *approximately* as she did her own children, but that her own children came first. She also testified, without objection, that she accompanied plaintiff to the hospital and signed his entrance contract and agreed to be responsible for the expense of treatment; that defendant was not then present; that, when she returned home thereafter, defendant asked what the expense would be and she stated "about $10,000.00"; and that he refused to pay the bill. There is no evidence to the effect that defendant held plaintiff out as his son; and his refusal to pay his medical expense tends to prove that he did not consider himself as standing in *loco parentis* to plaintiff. The evidence did not establish that defendant *intended* to occupy such a position. Horsman et al. v. United States et al., D.C., 68 F.Supp. 522, 524. Under the evidence here we cannot declare, as a matter of law, that such a relationship existed, even if the rule could be extended to include a twenty-two year old person.

■ Defendant also contends that he owed plaintiff no duty to warn him of danger because plaintiff was using defendant landowner's premises "for purposes connected with his own benefit, pleasure, and convenience", that he was a bare li-

censee. In Glaser v. Rothschild, Mo., 120 S.W. 1, 22 L.R.A.,N.S., 1045 (syllabi), the court held that a bare licensee takes premises as he finds them but that the landowner is required to exercise ordinary care for the safety of an invitee. Plaintiff was in the cornfield and in close proximity to the picker at the instance and direction of defendant, for defendant's benefit. Defendant was required to exercise ordinary care towards plaintiff to avoid injuring him. Plaintiff was not an employee, license, or a trespasser; he was an invitee. Fletcher v. Kemp, Mo., 327 S.W.2d 178, 182; Daugherty v. Spuck Iron & Foundry Company, Mo.App., 175 S.W.2d 45, 49.

■ Defendant pleaded and submitted the issue of plaintiff's contributory negligence. He now urges that he was contributorily negligent as a matter of law.

In support of this contention he points out that plaintiff stated in evidence that he knew that it was dangerous to get too close to the husking machinery of a corn picker, that he might be hurt if he did. However, there was medical evidence to the effect that plaintiff's mental condition was such that he would understand a direct warning to stay away from such machinery, which defendant did not give, but that he might not be able to understand the reason therefor. The extent of his mental deficiency was fully explored in the evidence, and the testimony of Dr. Lytton and Mrs. Rosenthal made his mental condition clear. Plaintiff also testified, and the jury had an opportunity to judge that issue from his testimony for they saw the witness and heard his testimony. There was evidence from which the jury could have found that his full usable mentality was below that of a ten year old child. In Cathey v. De-Weese, Mo., 289 S.W.2d 51, the court considered the question of whether a seventeen year old ninth grade boy, of average intelligence and ability, was guilty of contributory negligence as a matter of law, when his foot got caught in a hay baler. The court said (55–56) that, although he

had seen the printed sign of danger appearing on the machine and knew, independently, that it was dangerous to come in contact with the rollers of the machine, that such was not sufficient for the trial court to declare contributory negligence as a matter of law. The court said "* * * the question is whether, by reason of his youthfulness and inexperience, reasonable minds could differ as to his *realization* and *appreciation* of the danger". The verdict in plaintiff's favor was ordered re-instated. The facts in that case were far stronger in support of a ruling of contributory negligence than they are in the case at bar. In Jones v. Jones, Mo.App., 384 S.W.2d 807, this court considered a case where plaintiff was a mature man of ordinary intelligence who was injured while pulling on a pulley at the direction of the owner. We approved a verdict for plaintiff on the theory that he relied on the direction and assurances of defendant that it was a safe thing to do, plaintiff not being familiar with that operation. Here, there is testimony to the effect that defendant directed plaintiff, a mentally subnormal person, to walk behind the picker, between it and the following wagon, which defendant himself admitted was a dangerous place to walk. The plaintiff's contributory negligence, under the evidence here, was for the jury to determine.

■ Defendant charges error in the giving of instruction No. 1, in that it is therein assumed that defendant knew or should have known that it was dangerous to direct plaintiff to walk near the picker. No part of the instruction is set out in the brief in violation of Rule 83.05(a), V.A.M.R. Miller v. Wilson, Mo.App., 381 S.W.2d 31, 37. The point is not reviewable. However, the criticism is not justified.

The instruction is further criticised because it is assumed therein that plaintiff's arm became engaged in the picker as a result of walking near the picker. That criticism is, also unjustified.

■ It is also urged that error was committed by counsel for plaintiff in his final argument when he said: "there is a mistake here, we sued for $25,000.00. We don't want $25,000.00; we want $10,000.00. We don't want 25; we want $10,000.00. We don't want any more, but we don't want any less. * * * Ordinarily, as a lawyer representing an injured man, I'd say give him $14,000.00 plus the $4,000.00 that he's actually out—$18,000.00 at a minimum; but in this case just ten * * * when nine of you have agreed on a $10,000.00 verdict for him, put on your hats and go home". Defendant says the argument was calculated to and did inform the jury that his liability was insured for $10,000.00, which fact was true and known by plaintiff to be true. He cites and relies on the ruling in Adams v. Carlo, Mo.App., 84 S.W.2d 682, 686. There the court reversed and remanded. But plaintiff's Counsel there boldly stated that there was insurance to cover the verdict against defendant. That ruling has no application to this case. Here, no reference was made to insurance. Counsel was merely exercising the privilege of an advocate to indulge in his natural art of persuasion.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.