## THE STATE v. MIZNER.

1. **Schools: PUNISHMENT OF PUPILS.** In the absence of proof to the contrary the law will presume that a teacher punishes a pupil for a reasonable cause, and in a moderate and reasonable manner; but this presumption may be rebutted by proof.

2. ———: ———. The punishment of the pupil must be for some specific offense which the pupil has committed, and which he knows he is being punished for.

3. ———: ———: **AUTHORITY OF TEACHERS.** The teacher is not authorized to punish a pupil for refusing to do something the parent has requested that the pupil be excused from doing. The teacher may be justified in refusing to permit the attendance of a pupil whose parent will not consent that he shall obey the rules of the school.

*Appeal from Allamakee District Court.*

WEDNESDAY, DECEMBER 11.

AN information was filed before a justice of the peace charging the defendant with the crime of assault and battery. He was convicted, and appealed to the District Court, where he was again convicted, and now appeals to this court.

*J. B. B. Baker, A. M. May* and *F. M. Goodykoontz,* for appellant.

*J. F. McJunkin, Attorney General,* for the State.

SEEVERS, J.—This cause was before the court at a former term, and is reported in 45 Iowa, 248. At the time of the alleged assault the defendant was a teacher of a public school, and the prosecuting witness, Ada Buemer, a pupil therein. She was a month or more over the age of twenty-one years at the time. She resided with her father, and constituted a

part of his family. Her father wrote the defendant as follows: "Please excuse Ada afternoons, as her health will not permit her to attend all the time;" and again: "Please excuse Ada from the algebra class, she having more lessons than she can well attend to."

The testimony on the part of the State tended to show the foregoing writings were given to the defendant a few days previous to the assault. The prosecuting witness testified that when she handed one of them to the defendant he asked if she had written it. She replied her father had, and he so testified. The evidence tended to show the defendant declined to excuse her from the algebra class, and she testified she attempted to tell defendant her health would not permit her to take that study, but he interrupted her and said: "I don't want any words from you; I am talking now," and "told me to take my seat and come prepared with the lesson next time. I told him I could not study without help. He said: 'You can get help, and if you give me any more of your sass I will call you back here.'" She replied: "I don't want any more of your impertinence, Mr. Mizner." To which he replied: "That's enough now; that will do." This occurred on Monday. On the next day, Tuesday, the alleged assault and battery were committed.

When school was called that day the defendant asked the prosecutrix to come forward, and she went to where he stood, and the following, according to her testimony, occurred: "He said to me: 'Your excuse?' I said: 'Surely, I was here this morning before school called.' He said: 'Yes, but yesterday afternoon?' I said: 'I have brought an excuse for afternoons.' He said: 'You will fetch an excuse.' I said: 'Don't you remember I brought you an excuse from father excusing me from afternooons this winter.' He said: 'None of your sass, or I will take the hickory to you.' I said: 'Don't strike me.' My reason for making that remark was that he reached for the whip as he spoke. The whip was about six feet long, and was about a half an inch in diameter

at the largest end. He broke a piece off that end, * * and whipped me with the top part. * * It was not more than four feet long. * * Think he struck me a dozen times * * over my shoulder. * * I felt the blows. * * They produced marks that stayed there two months. * * Think the whip broke to pieces. * * He raised on his tiptoes every time he struck. * * I went to my seat and got my cloak. He said: 'Do you understand me now?' I said: 'No, sir, I do not understand you.' * * I made this remark because I did not know what he whipped me for."

There was other testimony on the part of the State which tended to sustain the prosecutrix.

The testimony on the part of the defendant tended to show that when the algebra class was called, on Monday, the prosecutrix did not come forward, and the defendant said: "Miss Beumer, your class is called." She said she thought she was excused from algebra. He told her she was not; to come to the class. She did so, but took a book in her hand, and said she did not have her lesson. He told her to pay attention to the recitation. She opened the book in her hand. He told her to close it, which she did. She opened it again, and turned partly in her seat and commenced turning the leaves. He told her to close the book and keep still, as he did not want to speak to her again. After the recitation closed there was some conversation between them as to the algebra, about the close of which she told the defendant she did not want any more of his impertinence; to which he replied: "That will do, Miss Beumer; take your seat." She then said: "Yes, that will do."

On Tuesday the witnesses for the defense stated what occurred substantially as those on the part of the State, except that after some talk about the "excuse" the defendant said: "If you don't stop your sass I'll whip you." She replied: "Just try that; you don't dare to strike me. If you do it will be the dearest whipping you ever gave any one; you will pay for it."

The evidence on the part of the defendant also tended to show there were no marks on the person of the prosecutrix, and that the whipping was not immoderate.

Such being the substantial facts there remains for determination the correctness of the instructions of the court, among which was the following:

I. "7. In the absence of all proof the law presumes that a father or school teacher punishes a child of the father or the pupil of the teacher for a reasonable cause and in a moderate and reasonable manner. But this presumption, like all other legal presumptions, may be rebutted by the proof."

<div style="margin-left:2em; font-size:smaller;">1. SCHOOLS: punishment of pupil.</div>

It is urged this instruction is erroneous, for the reason the teacher is not liable because of the punishment inflicted, but only in the event that it was excessive, and that the evidence fails to show such was the case.

Forty years ago it was held that "when the correction administered is not in itself immoderate, and, therefore, beyond the authority of the teacher, its legality or illegality must depend entirely, we think, on the *quo animo* with which it is administered. Within the sphere of his authority the master is the judge when correction is required, and of the degree of correction; and, like all others entrusted with a discretion, he cannot be made penally responsible for error of judgment, but only for wickedness of purpose." *State v. Pendergrass*, 2 Dev. & Batt., 365.

Twenty years later an instruction was refused which announced the rule that a teacher was not amenable criminally unless he inflicted the punishment with a bad intent, from vindictive feelings, and an instruction given which recognized the right to chastise a scholar by whipping, and the proof was sufficient to justify the instrument used as being a proper one, but that in "inflicting corporal punishment a teacher must exercise reasonable judgment and discretion as to the mode and severity of the punishment, by the nature of the

offense, and by the age, size and apparent powers of endurance of the pupil."

As to this instruction it was said: "The instructions given tended to justify the defendant in punishing his pupils with greater severity than is consistent with a just and humane exercise of the authority conferred on him by law. To say the least, they were sufficiently favorable to the defendant." *Commonwalth v. Randall,* 4 Gray, 36.

We concur with the Supreme Court of Massachusetts in the case last cited, and further than this we have no occasion to go in the present case. But, if the rule of the first case cited is the correct one, then we have no hesitation in saying there was no error in the instructions of the court, because the punishment was immoderate and excessive, if the testimony of the witnesses for the State is true, and this was a question for the jury. Any punishment with a rod which leaves marks or welts on the person of the pupil for two months afterward, or much less time, is immoderate and excessive, and the court would have been justified in so instructing the jury.

II. The jury were further instructed: "3. The legal objects and purposes of punishment in school are like the object and purposes of the State in punishing the citizen. They are threefold: *First,* the reformation and the highest good of the pupil; *second,* the enforcement and maintenance of correct discipline in school; and, *third,* as an example to like evil-doers. And in no case can the punishment be justifiable unless it is inflicted for some definite offense or offenses which the pupil has committed, and the pupil is given to understand what he or she is being punished for. And if you find from the evidence that the punishment in this case was inflicted upon the prosecutrix without her knowing what she was being punished for, then the punishment was wrongful on the part of the defendant. Punishment inflicted when the reason of it is unknown to the punished is subversive, and not promotive, of the true objects of punishment, and cannot be justified."

The portion of the foregoing objected to is that which declares the punishment must be for some specific offense which the pupil has committed and is given to understand he or she is being punished for.

The object of all punishment must be to accomplish the purposes specified in the instruction. The definition is an admirable one, and cannot, we think, be improved. If the pupil does not know why the punishment was inflicted reformation cannot be expected therefrom. Just the contrary result might be expected. Counsel mistake the meaning of the instruction. It does not require the teacher to state to the pupil in clear and distinct terms the offense for which he or she is punished. It only requires that the pupil, as a reasonable being, should understand from what occurred for what the punishment is inflicted. There was evidence on which this portion of the instruction could well be based, and all else was for the jury.

Counsel, in their argument, say the punishment was not inflicted because of the prosecutrix's "failure to pursue algebra," or "for not attending afternoon sessions of school," but for insolent and contemptuous conduct. Were it not for this admission we should have been at great loss to determine for what offense the prosecutrix was punished. The particular difficulty which ended in the whipping was in relation to her absence the afternoon previous. The argument is that she was impudent on that occasion; but the evidence on the part of the State shows otherwise, and the most that can be said is that the evidence is conflicting. The question was, therefore, one for the jury to determine. During both Monday and Tuesday, according to all the evidence, there was language used by the defendant which was unjustifiable, and which tended to show that he permitted himself to get into a passion, which, to say the least, is not commendable; nor can we say that the conduct of the prosecutrix was just what it should have been. Notably was this so on Monday; but there

is no pretense that she was punished on Tuesday for insolent conduct on the day previous.

III.   The fifth instruction was as follows:

"5.   If you find from the evidence that the prosecutrix was in feeble health, and was unable to pursue algebra studies with her other studies, and on account of such feeble health was unable to attend regularly the afternoon sessions of the school; and you further find that for that cause she was excused by her father from the study of algebra and from afternoon sessions of the school; and you further find that defendant had been informed of such facts; then you are instructed as a matter of law that he had not the lawful right to chastise the prosecutrix for failure on her part to pursue such studies, or to attend the afternoon sessions of the school."

It is said there was no evidence showing that the health of the prosecutrix would not permit her to study algebra.   If by this is meant there was no positive and direct evidence that such was the case we agree with counsel; but there was evidence so tending.   Her father thought so, and she herself so claimed.   This may, for aught we know, have been a sham; but as there was evidence on the subject it was for the jury to inquire as to its truth.   But if, as is conceded by counsel, the prosecutrix was not whipped for failure to attend school in the afternoons, or to study algebra, then, even if it be conceded the instruction is erroneous, it cannot be said to be prejudicial.   It was not prejudicial for another reason, which will be presently noticed.

IV.   A portion of the sixth instruction is as follows:   "The counsel for the defendant admits before you and the court, in

3. —— : —— : argument, that the father may lawfully excuse his
authority of
teacher.   minor child from a particular study in the school if for any reasonable cause the father may believe the good of such minor so requires;" and the instruction proceeds to lay down the rule that the father of the prosecutrix might

under the circumstances do so in the present case, although she was not a minor.

Counsel complain of the portion of the instruction which is quoted; but if counsel did so state in argument, or concede before the court, we see no objection to the attention of the jury being called thereto. That counsel did so concede must be conclusively presumed, in the absence of any showing to the contrary. If the father may excuse his minor child from a study, or during afternoons, we do not see why he might not the prosecutrix under the circumstances. But if the conceded proposition be true then either the father could do so or the adult pupil could excuse herself.

Now it is shown that both the pupil and her father desired this. If, therefore, the rules adopted by the teacher required that the prosecutrix should study algebra, and be in attendance during afternoons, and that proper discipline and the good of the school, as a whole, required an enforcement of the rules, we are constrained to think the mode adopted was not the proper one. Compulsory education is not yet the rule in this State, and instead of whipping the prosecutrix for failure to attend or study algebra, when both she and her father desired she should be excused, we think the defendant should have plainly said to both the prosecutrix and her father that she could not attend the school unless she was prepared to obey the rules in this respect. If a pupil attends school it must be presumed he submits himself to the rules; but that is not this case. Until compulsory education is established we are unwilling to sanction the rule that a teacher may punish a pupil, as in this case, for not doing something the parent has requested the pupil to be excused from doing. The remedy in such case is not corporal punishment, but expulsion.

There is nothing else that demands attention. The instructions refused, so far as they contained the law, were given or properly refused because not the law.

AFFIRMED.