STEBER, by guardian *ad litem,* Appellant, vs. NORRIS, Respondent.

*November 19—December 8, 1925.*

*Parent and child: Person standing in loco parentis: Punishment of child: Reasonableness: Who determines: Damages: Inadequacy as basis for new trial: Perverse verdict: What constitutes.*

1. One standing *in loco parentis* has the right to punish a child under his care if the punishment is reasonable and for the child's welfare; but whether such punishment is reasonable or is excessive is a matter for judicial investigation, and does not rest absolutely in the discretion of such person. p. 371.
2. In determining whether the punishment inflicted has been excessive, the conduct of the child, the nature of his misconduct, the character of the instrument used for punishment, and the marks or wounds left on his body are all subjects to be considered. p. 372.

3. In an action for the alleged excessive punishment of an eleven-year-old boy who was under defendant's care, an award of nominal damages is *held* grossly inadequate in view of the evidence as to the nature of the weapon used and the marks and wounds left on the body of the boy.  p. 375.

4. A verdict may be perverse although the jury did not act dishonestly or from improper motives.  p. 375.

ESCHWEILER, ROSENBERRY, and DOERFLER, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge.  *Reversed, with directions.*

For the appellant there was a brief by *Brennan, Lucas & O'Day* of Milwaukee, and oral argument by *Martin J. Brennan.*

For the respondent there was a brief by *Fawcett & Dutcher* of Milwaukee, and oral argument by *George C. Dutcher.*

JONES, J.  The plaintiff in this action at the time of the alleged assault was an eleven-year-old boy, whose parents had sent him to the farm of the defendant in the summer of 1923, and upon request he was permitted to return in 1924 when the mother signed a written statement giving the defendant authority to discipline the plaintiff if and when he broke the rules and regulations enforced upon the farm.  The plaintiff was supposed to work at assigned tasks about the farm for six hours a day and for this labor received his board and room.

The undisputed testimony shows that the plaintiff had failed to perform some of the tasks assigned to him and had told several falsehoods, and that upon July 23, 1924, the defendant took the plaintiff to his office and there, after asking him why he had not performed his work and receiving no answer, inflicted corporal punishment by means of a crude rubber whip about thirty inches long.  The clothing of the boy had been so removed that the punish-

ment was inflicted upon the nude body of the boy, who swore that he was undressed and stripped by the defendant, though the defendant testified that the plaintiff removed his clothing voluntarily.

The boy testified that while he was being whipped he pleaded to be allowed to go, and cried and promised "not to do it any more;" that he was struck about forty or fifty times. He was required to work overtime for six days after the whipping, and on the seventh day he found a way to escape and went home. The day after the whipping he wrote his mother asking her to write the defendant to let him come home, but at the bottom of the letter the defendant wrote requesting the mother not to comply. The boy's testimony was somewhat confused and not entirely consistent, but he testified that he had much pain and suffering and that his back still pained him at the time of the trial when the weather was damp. He claimed that he was not well upon the days when he did not work. Five or six days after his return home he was examined by two physicians, who testified in substance that there were stripes on his back reaching down to the middle of the thighs; that there were several crusts where abrasions were in the process of healing and scabs on numerous parts of the body; that there were marked swellings and discoloration of the right lumbar region. One of the physicians testified that there were a good many stripes on the back, possibly twenty; there were five other witnesses, mostly members of the plaintiff's family, who gave testimony as to the bruises and contusions and scabs which they found when the boy returned home from the defendant's farm.

The defendant testified that it was brought to his notice that the plaintiff had failed to work as required and had lied upon several occasions; that he claimed the authority to punish the plaintiff by virtue of the card signed by the mother; that he used the whip in question because he expected to find a strap which was missing and the whip was

the only thing convenient; that he did not count the strokes, but they could not have exceeded ten; giving the boy ten lashes he thought was punishment enough of that kind; that in inflicting the blows there was not more than a three-foot swing. He swore that he inflicted only light punishment; that he struck the lad only with the idea of punishing him for his disobedience and untruthfulness; that the boy proceeded to play with a dog in the yard as soon as he was dismissed from the office; that he showed no marks such as were testified to by the plaintiff's witnesses, and that he slept normally after this whipping.

During the summer of 1924 the defendant had with him between ninety and one hundred boys, who were required to work from 8 to 11:30 and from 1 to 4 o'clock. There were two large farms on which there were many kinds of work to be done. The defendant was an officer of the juvenile court of Milwaukee county, serving without pay, and there was testimony to the effect that the institution is maintained as a charitable one from which no profit is made; on the contrary, it is operated at a loss. Many of the boys were delinquent and sent there by court orders; others, including the plaintiff, were sent there by their parents. In the evening recreation of various kinds was furnished.

The defendant produced one witness, a minister, who examined the plaintiff's back on or about the 9th of August and said that he saw no marks or scars. Three physicians were called by the defendant. One testified that he examined the plaintiff about September 20th, and "at that time Dr. Corcoran called to my attention two or three brown spots which I had noticed over the right hip. Aside from that I could find nothing." Dr. Corcoran, one of the physicians called by the plaintiff, testified that at that time the marks had somewhat disappeared, but that marks were then present although they did not look nearly as bad as on his former examination. The two other physicians called

for the defendant testified that on May 27, 1925, and May 28, 1925, they examined the plaintiff and found no evidence of trouble.

Among other instructions to the jury the following were given:

"That the principal of a school, and a person situated as was the defendant at the time and place in question, has the right and it is his duty to adopt reasonable rules to promote good order and discipline, and may, acting in a proper spirit and on proper occasions, administer reasonable corporal punishment to the pupil or a boy under his care and in his charge and custody, having regard to the character of the misconduct or offense, and the age, sex, size, and strength of the child. Such reasonable corporal punishment may be administered for an infraction of the rules and to maintain proper discipline in the school or institution. The principal may exact compliance with all reasonable commands, and may, in a reasonable spirit, inflict corporal punishment upon a pupil or child under his care and in his charge and custody for disobedience or other misconduct. The principal or person situated as was the defendant at the time and place in question stands for the time being *in loco parentis* or in the place of parents to his pupils and children under his care and in his charge and custody, and because of that relation he must necessarily exercise authority over them in so far as good order and discipline may reasonably require. In the school, as in the family, there exists on the part of pupils and children the obligation of obedience to lawful and reasonable commands, subordination, civil deportment, respect for the rights of other pupils, and fidelity to duty. In inflicting corporal punishment the principal or guardian may take into consideration habitual disobedience of the pupil, but the corporal punishment should not be excessive, unreasonable, or cruel, and must always be measured and apportioned to the gravity of the misconduct or offense and be within the bounds of moderation.

"If you are satisfied by a preponderance of the evidence to a reasonable certainty that the punishment administered

Steber v. Norris, 188 Wis. 366.

by the defendant to the plaintiff was excessive, unreasonable, or cruel, then your verdict will be for the plaintiff. If you are not satisfied by a preponderance of the evidence to a reasonable certainty that the punishment administered by the defendant to the plaintiff was excessive, unreasonable, or cruel, but within the bounds of moderation, then your verdict will be for the defendant."

The jury, made up of eight men and four women, all of whom upon the *voir dire* examination had stated they were opposed to the infliction of corporal punishment upon children, found the defendant guilty of assault and battery and allowed the plaintiff damages in the sum of one dollar and costs, refusing to assess punitive damages. The court refused to increase the amount of damages and denied a motion for a new trial and entered judgment upon the verdict, and from that judgment the plaintiff appeals.

Counsel for the parties do not challenge the correctness of the instructions as to the relation which plaintiff and defendant sustained to each other, and we shall assume that the defendant had the right to inflict corporal punishment. Probably no case would be found on all-fours with the one before us, or very similar. But there are many cases determining the rights and duties of teachers in their relations with pupils, and such cases may properly be considered in determining the questions now involved.

It may be said to be the general rule that one standing *in loco parentis* has the right to punish a child under his care if the punishment is moderate and reasonable and for the welfare of the child. Necessarily, the propriety of inflicting corporal punishment to a considerable extent rests in the discretion of the person holding such relation. But whether the correction is reasonable and proper or whether it is immoderate or excessive does not rest absolutely in the discretion of the teacher or other person inflicting the punishment. It is a matter for judicial investigation. It

is not to be assumed that although a teacher or the defendant in this case stands in the relation of a parent he has the same right to inflict punishment as a parent.

"This parental power is little liable to abuse, for it is continually restrained by natural affection, the tenderness which the parent feels for his offspring, an affection ever on the alert, and acting rather by instinct than reasoning.

"The schoolmaster has no such natural restraint. Hence he may not safely be trusted with all a parent's authority, for he does not act from the instinct of parental affection. He should be guided and restrained by judgment and wise discretion, and hence is responsible for their reasonable exercise." *Lander v. Seaver,* 32 Vt. 114, 122.

In determining whether the punishment has been excessive, the conduct of the child, the nature of his misconduct, the nature of the whip or instrument used for punishment, the kind of marks or wounds left on the body, are all subjects to be considered. It is unnecessary to cite and quote from the many decisions dealing with the subject under discussion. They will be found collected in the notes now referred to. 65 L. R. A. 891; 21 L. R. A. N. S. 216; 12 Am. & Eng. Ann. Cas. 353; 1 Brit. Rul. Cas. 718.

It is argued by counsel for respondent that there was ample testimony to sustain the verdict and that the plaintiff sustained only nominal damages. It is true there is some conflict in the testimony and it becomes necessary to consider the nature of that conflict. There was a large mass of testimony, part of it by disinterested witnesses, showing a condition of the boy's body one week after the assault which could only have resulted from severe blows. That evidence is undisputed except by the statement of the defendant that he inflicted only a light punishment. One of the defendant's experts testified that, at a time nearly two months after the assault complained of, he made an examination and found only two or three brown spots. Two other experts called by the defendant testified as to a time

about ten months after the assault complained of. Their
testimony was relevant on the question whether there had
been such lasting injury as was claimed, but could have
little or no bearing on the boy's condition in July, 1924.
The witness of the defendant who saw no marks about two
weeks after July 23, 1924, was contradicted by one of de-
fendant's experts who did see marks more than a month
after the examination by this witness, and in view of the
overwhelming evidence to the contrary we cannot regard
the testimony of this witness as convincing. We see no
reason to doubt the truthfulness of the two experts called
by the plaintiff who testified to the condition of the boy's
person about one week after the assault. Their testimony
and that of other witnesses called by the plaintiff is cor-
roborated by the nature of the lash which was used. It
was one bought by the defendant in South America and it
does not appear for what general purpose it was used. It
was described by the defendant as follows: "The whip was
made out of not very well refined rubber and was twisted.
The whip was about two feet six or. eight inches in length.
There was a ring made of the rubber itself at the end of it.
The whip varies from about one and one-fourth inch down
to about one-fourth of an inch." It is one of the exhibits in
the case. Being twisted and rather heavy, it has great
possibilities when applied to the bare flesh.

The only misconduct of the boy which was objected to
was that he had not worked as directed and that he had
lied. Those things deserve correction, but they were not
unpardonable sins, nor did they call for such a lashing as
left marks, which, according to the almost undisputed testi-
mony, were found on the boy on his return to his home.
The jury found the defendant guilty of assault, and we
do not see how on the testimony they could avoid so finding.
It follows that under the instructions given by the court
the jury must have believed that the punishment was ex-

cessive, but they measured the excess by the sum of one dollar, although they were given the usual instruction that if they found for the plaintiff they should assess such compensatory damages as they found from the preponderance of the evidence to a reasonable certainty would be required to reasonably compensate the plaintiff for his mental and physical suffering. They were also given the instructions usual in such cases as to compensation for future consequences of the injuries. It is argued by counsel for the respondent that the assessment of damages was peculiarly within the province of the jury. We fully recognize the force of this rule, as very recently declared in an opinion by Mr. Justice DOERFLER in *Schmidt v. Riess,* 186 Wis. 574, 203 N. W. 362, and in many other decisions of this court. Our duty to direct new trials when damages are claimed to be excessive is very often invoked and is frequently exercised. Appeals on the ground that damages are inadequate are much less frequent, probably because juries are more likely to be liberal than niggardly in the assessment of damages. But the power of the court in both classes of cases rests on the same grounds, because it is quite as unjust that one person should receive too little compensation for a wrong done as that another should receive too much.

We are convinced that in this case the jury disregarded both the strongly preponderating and almost undisputed testimony given for the plaintiff on the question of damages and the instruction of the court. We cannot understand how on finding the assault they arrived at their verdict, except as an improper compromise. We appreciate the weight to be given to the finding of a jury on the question of damages, especially when it is approved by the trial judge. We have considered the argument of counsel that in carrying on his farms in the manner he did the defendant was doing a laudable work. But we cannot sanction the view that in this generation it is permissible for a teacher or other person *in loco parentis,* for such misconduct as was proven in

this instance, to inflict such blows as were given in this case with such a whip as was used, on the bare body of a child. The verdict of the jury may not have been perverse in the sense that they acted dishonestly or from improper motives. Such action is not an indispensable element in perversity.

"If a jury, disregarding the judge's charge, either from good motives or bad ones, or through prejudice or other cause, renders a verdict one way when the evidence clearly preponderates the other, they act perversely. It would be exceedingly unjust, however, to stamp all such conduct as characterized by dishonesty in any sense. A verdict which is the result of anything ulterior to a reasonably fair application of the judgment of the jury to the evidence and the law as given by the court is perverse." *Godfrey v. Godfrey,* 127 Wis. 47, 106 N. W. 814.

We consider that the jury disregarded the instructions of the court, that the award of damages was grossly inadequate and therefore perverse within the meaning of the decisions, and that the verdict should have been set aside and a new trial granted. *Olsen v. Brown,* 186 Wis. 179, 202 N. W. 167; *Prahl v. Hogensen,* 185 Wis. 37, 200 N. W. 660; *Whitney v. Milwaukee,* 65 Wis. 409, 411, 27 N. W. 39; *Emmons v. Sheldon,* 26 Wis. 648; *Lines v. Milwaukee,* 147 Wis. 546, 133 N. W. 592.

*By the Court.*—Judgment reversed, and the cause remanded with directions that a new trial be ordered.

ESCHWEILER, J. (*dissenting*). The verdict of the jury, confirmed as it was by the trial court, can be, in my judgment, supported by the record, and for that reason I cannot concur in the result reached by the majority.

I am authorized to say that Mr. Justice ROSENBERRY and Mr. Justice DOERFLER join in this dissent.