STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
BERNICE L. STRAIGHT, DEFENDANT AND APPELLANT.
No. 10041.
Submitted November 2, 1959. Decided December 10, 1959.
347 Pac. (2d) 482.

See **C. J. S.** Assault and Battery, § 97.

Michael J. Whalen, Billings, for appellant.

Forrest H. Anderson, Atty. Gen., Louis Forsell, Asst. Atty. Gen., William J. Speare, County Atty., Billings, for respondent.

Mr. Whalen and Mr. Forsell argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment of conviction on a jury verdict for the crime of assault in the third degree. The defendant had been charged with assault in the second degree and the conviction of the lesser crime was found by the jury. Both the jury and the court fixed punishment for the maximum of third degree assault, six months in jail, and a fine of $500.

At the time the information was filed, the defendant was employed in Carbon County, Montana, as a rural school teacher, supporting himself, his wife and two minor children.

The defendant and his wife had been caring for the minor children of Beulah Straight in their home since the latter part of December 1958. This baby-sitting arrangement had been in existence a week and three days on January 4, 1959. Beulah Straight is a cousin of defendant by marriage, and the mother of three minor children, namely, Ellis, born August 18, 1956, Oscar, who was about one year old, and an older daughter whose name and age were not disclosed. Ellis, at the time of the alleged assault, was of the age of less than 29 months. Beulah Straight testified that she had given the defendant permission to spank her children.

Sometime between noon and three p. m. on January 4, 1959, the defendant came to the home of one, Mrs. Sjostrum, in Billings to pick up the oldest daughter of Beulah Straight who had been staying with Mrs. Sjostrum since the day before. The defendant apparently remained in Mrs. Sjostrum's home for some period of time. The temperature outside was twenty degrees below zero. Evidently Ellis Straight, the 29 month old baby, let Oscar, the year old baby, out of the automobile of the defendant in which they had been left. As the result thereof, the fingers on both hands of year old Oscar Straight were severely frozen.

Because of what must have been considered by the defendant as the bad deportment of 29 month old Ellis, the defendant spanked or beat Ellis with his belt. During this time the defendant and Mrs. Sjostrum sought medical advice as to what to do for Oscar's frozen hands and first aid was administered.

Later in the afternoon, the defendant left with the children. That evening about 9:30 p. m. he took the children with him in his car and picked up Beulah Straight, their mother, at her place of employment and then drove her and the children home, which was about a half-hour drive. The defendant stayed at

Beulah Straight's home and visited for some time, and then left for Red Lodge. Their relationship had been cordial and friendly at that time.

The assault, which was charged by information filed on January 15, 1959, grew out of the spanking or beating of the 29 month old baby with a belt by the defendant on January 4. The State's case was founded upon the testimony of three witnesses, Ruth Sjostrum, in whose home the alleged assault took place; Beulah Straight, the mother of 29 month old Ellis; and Dr. George W. Nelson, the doctor who examined the baby the following day. The defendant presented no testimony whatsoever.

The evidence presented to the jury showed that the child had been beaten, his body was bruised and black and blue. The examining physician testified that he found bruises two inches long and one inch wide on the child's chest and lower abdomen; that his buttocks and legs were bruised, his penis scratched and swollen, and his scrotum scratched.

The testimony was quite clear that the defendant had inflicted these bruises with the belt on the afternoon of January 4, 1959, and that after beating or spanking the child, he stated ''We will let it cool off and give him more.'' All of this testimony was uncontradicted.

As related before, defendant offered no testimony whatever. After the first witness was sworn, defendant objected to the introduction of any evidence on the ground that the information did not state a public offense. After both sides had rested, the objection was renewed by a motion to discharge the jury and release the defendant. During the course of the trial, on four different occasions, the defendant moved the court to direct a mistrial. All of these motions were denied. When the State rested its case, the defendant moved the court to direct the jury to acquit and also to advise the jury to acquit, both of which motions were denied. The defendant's sole attempt to make a case was by attempting to show a failure of the State's case to

support the crime charged, and to make some kind of defense by cross-examination.

The defendant has specified as error some thirty-three specifications of error. The specifications generally may be divided into three categories: (1) The information; (2) The conduct of the trial, including rulings on evidence; and (3) The instructions.

Certain of the specifications of error set forth are not argued in defendant's brief nor were they argued in oral argument, and hence will be deemed waived.

The information charged that "one Bernice L. Straight, late of the County of Yellowstone, State of Montana, on or about the 4th day of January, A. D. 1959, at the County of Yellowstone and State of Montana, committed the crime of Assault In The Second Degree, in that the said Bernice L. Straight, then and there being, then and there did, wilfully, wrongfully, unlawfully and feloniously assault a human being, to-wit: Ellis Straight, by wounding and inflicting grievous bodily harm upon the said Ellis Straight; contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the State of Montana."

The charge contained in the information is the wording of section 94-602, R.C.M. 1947.

R.C.M. 1947, section 94-605, so far as applicable to this case, provides:

"*Use of force not unlawful.* To use or attempt or offer to use force or violence upon or towards the person of another is not unlawful in the following cases: * * *

"4. When committed by a parent, or an authorized agent of any parent, or by a guardian, master, or teacher, in the exercise of a lawful authority to restrain or correct his child, ward, apprentice, or pupil, and the force or violence used is reasonable in manner and moderate in degree."

The meaning of the words in the foregoing statute, "reason-

able in manner and moderate in degree" is the concern of this court on this appeal.

As to the information, defendant's specifications of error allege that the information was fatally defective in that it did not allege a specific intent. It is also urged that since the information did not allege the manner in which the assault was made, that the introduction of evidence of the use of the belt was not proper.

In State v. Broadbent, 19 Mont. 467, 471, 48 Pac. 775, 777, this court held an information sufficient under what is now R.C.M. 1947, sec. 94-602, where intent was not specifically alleged. The court there said: "Under subdivision 3, sec. 401, Pen. Code [1895], every person is guilty of an assault in the second degree who 'willfully or wrongfully wounds, or inflicts grievous bodily harm upon another, either with or without a weapon.' The specific intent to wound or inflict grievous bodily harm upon another by the assault is not an ingredient of the offense by the statute. The statutory offense consists in willfully or wrongfully wounding or inflicting grievous bodily harm upon another. It is true that a criminal intent must be alleged in some way. But must it, under this statute, be specifically alleged? It is alleged in the information that the defendant 'unlawfully, feloniously, willfully, and wrongfully did inflict grievous bodily harm' upon Plum. In Bishop's New Criminal Procedure (subdivision 3, sec. 521, vol. 1), we find the rule thus stated: 'The evil intent, being an element in every crime, must always be in some way alleged. Direct words, varying with the case, are required where it is in a form special to the particular offense, or where it is an affirmative item in the charge; but where, in the nature of the individual case, it is a part of the acts alleged, it need not be separately stated. The joint intent and act need simply be so set down as, on the whole, to show a *prima facie* crime.'

"The same author (in section 523, vol. 1) says: Generally 'the rule is that, if the statute creating an offense is silent concern-

ing the intent, nothing of the intent need appear in averment.'
We think, therefore, that the information contains a sufficient
allegation of intent in its general terms alleging the offense.

"Appellant contends that the instructions of the court were
erroneous, because they did not contain a charge to the jury
that they must find that the defendant committed the assault
with the intent to inflict grievous bodily injury upon Plum.
For the same reasons that we hold it unnecessary to allege such
specific intent in the information, we think it was not error to
refuse to charge the jury that they should find the assault to
have been committed with such specific intent. We think it was
sufficient to charge the criminal intent generally. This the
court did."

The defendant urges that this case is not authority for the
case here, because the spanking in this case, as an initial act,
was lawful; and the court, in the Broadbent case, relied upon
Bishop's New Criminal Procedure which said:

"The evil intent, being an element in every crime, must al-
ways be in some way alleged. Direct words, varying with the
case, are required where it is in a form special to the particular
offense, or where it is an affirmative item in the charge; but
where, in the nature of the individual case, it is a part of the
acts alleged, it need not be separately stated. The joint intent
and act need simply be so set down as, on the whole, to show a
*prima facie* crime."

Then the defendant says, that in the instant case, it cannot
be assumed that the defendant had an evil intent simply
because he spanked the child; in fact, that he is entitled to a
presumption to the contrary, and that the rule that an evil act
will be presumed to be accomplished with an evil intent cannot
apply. We think though that the rule is that if the statute
creating the offense is silent as to intent, no specific allegation
on the subject is necessary, as stated in State v. Broadbent,
supra. Specific intent needs to be proved in second degree as-
sault charges only under subdivisions 1, 2 and 5 of section

94-605, because in those instances the statute demands it. More will be said later in connection with instructions concerning the criminal intent required. However, we do say that the information was sufficient to let a defendant know specifically the crime with which he is charged.

Appellant next asserts that because it was not charged specifically in the information that a belt was used in the assault, evidence that a belt was used should not have been admitted. The office of the information is to let the defendant know what he is being charged with having done, so that he can prepare his defense. How evidence of the use of a belt prejudices the rights of the defendant is not shown. No claim of lack of opportunity to prepare on that point or surprise is made. We do not deem this specification of error of any great importance.

On the whole, the charging part of the information being in the language of the statute applicable, no fatal defect is apparent.

As previously stated, during the course of the trial, the fendant made four motions for mistrial. These were based on improper questions by the prosecuting attorney and allegedly prejudicial testimony. Regarding the propriety of a motion for mistrial see Hayward v. Richardson Const. Co., 136 Mont. 241, 347 Pac. (2d) 475. In two of these instances where the prosecuting attorney referred to beating or spanking "children" instead of the single child who was the subject of the assault charge, the judge admonished the jury to disregard this statement. In one instance, where the doctor was asked to testify to possible or probable injuries, the question was withdrawn. If there was any error in these statements we feel that it was cured by the court admonishing the jury to disregard the remark in the above two instances and the withdrawal of the question in the third. See 53 Am. Jur., Trial, sec. 505, p. 407. Furthermore, the court instructed the jury to disregard all remarks made by counsel which were not supported by the evidence.

We do not mean to imply that error can always be cured by withdrawal of the question, admonishment to disregard or instruction to disregard. Certain instances can be conceived of where the question or testimony might be so prejudicial that the error would not be cured by the above methods. In the present case however, the error was not so prejudicial to the substantial rights of the defendant that it could not be cured by one of these methods.

The fourth alleged ground for mistrial came about as follows: While the doctor was testifying he was asked to tell the jury his findings after examining Ellis Straight. He replied "physical examination of Ellis Straight revealed on the face there were bruises." Counsel for defendant objected on the ground that there was no evidence of striking the child on or about the face and again moved the court to grant a mistrial. The court denied this motion and allowed the doctor to continue, subject to a motion to strike the irrelevant portions of his testimony.

The foregoing statement by the doctor was incomplete and might well have meant, "on the face of the examination." The word face was heard by the jury on two occasions. In addition to the one mentioned above, when the prosecution resumed its questioning the doctor answered "begin again at the face?" The prosecution clarified this by saying "The body" and thereafter the doctor confined his testimony to the body. This kept the doctor within the bounds of prior testimony and prevented a possible prejudicial effect on the jury due to references to facial injuries on this two year old boy when there had been no previous testimony regarding hitting about the face.

Under section 94-8207, R.C.M. 1947, prejudice in a criminal case will not be presumed, but rather must appear from the denial or invasion of a substantial right from which the law imputes prejudice. State v. Hall, 55 Mont. 182, 175 Pac. 267. It is up to this court to decide whether an error affects the substantial rights of the defendant and the defendant must

demonstrate prejudice from the record. State v. Byrd, 41 Mont. 585, 111 Pac. 407.

This court will not reverse a judgment for harmless error and ▮▮▮▮▮▮▮ the question of whether a particular error is harmful or harmless depends on the facts of the case under review. Hill v. Chappel Bros. of Montana, Inc., 97 Mont. 305, 314, 33 Pac. (2d) 819. We do not feel that these references to the face of the child, even if that were the doctor's meaning, caused the defendant to be prejudiced in any substantial right, as he possibly could have been by repeated reference to facial injuries on this two year old boy. Moreover, it does not clearly appear in the record that the doctor was referring to the face of the child. The county attorney interjected the comment that this was merely a descriptive word. Subsequent testimony gave credence to this statement in that no further reference was made to facial injuries either in direct or cross-examination.

Several other specifications of error are based on the prosecuting attorney's use of such words as "beat," "injuries," and "spanking with a strap." In light of the direct evidence of the punishment which preceded these questions, we do not feel that it was error for the county attorney to couch his questions in such terms.

We next turn to what this court considers the most important specifications of error, the instructions. The trial court, in one of its instructions, instructed the jury as follows:

"You are further instructed that if you find, beyond a reasonable doubt, that the defendant, Bernice L. Straight, did wilfully, wrongfully and unlawfully assault Ellis Straight at or about the time charged, but that such assault did not result in grievous bodily harm, then you may find the defendant, Bernice L. Straight, guilty of Assault in the Third Degree."

The court also gave an instruction regarding the usual presumption of innocence in a criminal case. Defendant predicates as error the failure of the court to give his offered Instruction No. 26, which stated:

"In a prosecution like this for inflicting excessive punishment upon a child, the law will presume that the punishment inflicted was necessary, reasonable, and proper and the results of the exercise of correct judgment."

The correctness of this ruling brings us to the most important aspect of this case. The question presented here is whether one standing *in loco parentis,* in the place of the parent, is entitled to the benefit of this presumption, and further, whether the prosecution should be required to prove either permanent injury or express or implied malice. The alternative to this procedure is to allow the jury to determine from the facts whether the person standing *in loco parentis* "wilfully, wrongfully and unlawfully" assaulted the child, without giving the defendant the benefit of the presumption that his acts are correct and not requiring the prosecution to prove permanent injury or malice.

Both views receive support in many jurisdictions. The view that the prosecution must prove permanent injury or malice is approved by the Court of Common Pleas of Ohio in State v. Lutz, 1953, 113 N. E. (2d) 757. In this case, the Ohio Court adopts the rule laid down in the Alabama case of Holmes v. State, Ala. 1905, 39 So. 569, 570, where the rule is stated as follows at page 759 of 113 N. E. (2d) :

" 'One standing *in loco parentis,* exercising the parent's delegated authority, may administer reasonable chastisement to a child or pupil to the same extent as the parent himself; and to fasten upon him the guilt of criminality he must *not only* inflict on the child immoderate chastisement but he must do so *malo animo,* with legal malice or wicked motives, or else he must inflict on him some permanent injury'." The Ohio Court cites the following cases as being in accord with this rule: Vanvactor v. State, 113 Ind. 276, 15 N. E. 341; State v. Mizner, 50 Iowa 145, 32 Am. Rep. 128; State v. Pendergrass, 19 N. C. 365, 31 Am. Dec. 416; Patterson v. Nutter, 78 Me. 509, 7 A. 273; Anderson v. State, 40 Tenn. 455, 75 Am. Dec. 774; Lander v. Seaver, 32 Vt. 114, 76 Am. Dec. 156; Commonwealth v. Ran-

dall, 4 Gray 36, 70 Mass. 36; Commonwealth v. Seed, 5 Clark, Pa., 78; Dowlen v. State, 14 Tex. App. 61; 4 Am. Crim. Rep. 49; People v. Mummert, 183 Misc. 243, 50 N. Y. S. (2d) 699.

We note that the Ohio statute is not similar to our own.

The opposite, and so-called "modern" rule is stated in the California case of People v. Curtiss, 116 Cal. App. Supp. 771, 300 Pac. 801, 803, as follows:

"* * * the more enlightened view—a view more consonant with modern ideas relating to the relationship between parents or those standing in their place and children—refuses to make the teacher the sole arbiter. The courts deciding these cases hold that both the reasonableness of, and the necessity for, the punishment is to be determined by a jury, under the circumstances of each case."

The California Court cites the following cases as being in accord with this rule: Clasen v. Pruhs, 69 Neb. 278, 95 N. W. 640, 642, 5 Ann. Cas. 112; Stanfield v. State, 43 Tex. 167; Patterson v. Nutter, 78 Me. 509, 7 A. 273, 57 Am. Rep. 818; Lander v. Seaver, 32 Vt. 114, 76 Am. Dec. 156; Hinkle v. State, 127 Ind. 490, 26 N. E. 777; Steber v. Norris, 188 Wis. 366, 206 N. W. 173, 43 A.L.R. 501; State v. Spiegel, 39 Wyo. 309, 270 Pac. 1064, 64 A.L.R. 289.

In two instances, the California and the Ohio Courts both cite the same cases in support of their respective rules. These are Patterson v. Nutter, supra, and Lander v. Seaver, supra.

It is our opinion, after carefully considering each case that they support the California rather than the Ohio view. It is true that in the Lander case on page 124 of 32 Vt., the Supreme Court of Vermont says that "considerable allowance should be made to the teacher by way of protecting him in the exercise of his discretion. Especially should he have this indulgence when he appears to have acted from good motives and not from anger or malice." But the court goes on to say, "Hence the teacher is not to be held liable on the ground of excess of punishment, unless the punishment is *clearly* excessive and would be held so

in the general judgment of reasonable men. If the punishment be thus *clearly* excessive, then the master should be held liable for such excess, though he acted from good motives in inflicting the punishment, and in his own judgment considered it necessary and not excessive.'' The court points out that the teacher should have the benefit of the doubt but expressly disapproves of the rule which requires the prosecution to prove malice.

The Supreme Court of Maine in Patterson v. Nutter, supra, 7 A. at page 275, after quoting with approval from the Lander case, states that ''The correct rule holds the teacher liable if he inflicts a punishment which the general judgment of such [reasonable] men, after thought and reflection, would call clearly excessive.''

In our opinion, the correct rule and the rule which these cases support is the rule adopted by the California Court in People v. Curtiss, supra.

A parent, teacher, baby-sitter or anyone else standing *in loco parentis* is not given unlimited discretion in the mode or degree of chastisement under our statute. Some cases in other jurisdictions go so far as to say that one standing *in loco parentis* acts in a quasi-judicial capacity and has almost unlimited discretion regarding the punishment of the child entrusted to his care. This court expressly disapproves of this view. Our statute (section 94-605) refutes the presumption urged by defendant.

In this state, we are controlled by a specific code provision, i. e., section 94-605, R.C.M. 1947, which provides as follows:

·` ''*Use of force not unlawful.* To use or attempt or offer to use force or violence upon or towards the person of another is not unlawful in the following cases: * * *

''4. When committed by a parent, or an authorized agent of any parent, or by a guardian, master or teacher, in the exercise of a lawful authority to restrain or correct his child, ward, apprentice, or pupil, and the force or violence used is *reasonable in manner and moderate in degree.''* Emphasis supplied.

Under the above section, it is not necessary, in order to con-

vict one standing *in loco parentis* of assault upon a child, to prove either express or implied malice or permanent injury. It is up to the jury to determine from the facts and circumstances of each individual case whether the manner is reasonable and the degree moderate. If the jury determines that such is not the case then they may go on and determine whether or not there is sufficient evidence to establish the assault.

This statute prevents the trial court from indulging in a presumption that the punishment by one standing *in loco parentis* is necessary and reasonable and the result of exercising correct judgment. The punishment is reasonable and necessary only when the jury determines that the manner is reasonable and the degree moderate.

In the instant case, there was ample evidence from which the jury could determine beyond a reasonable doubt that the use of a belt was not a reasonable manner of administering punishment to a two year old child. The resulting bruises and abrasions sufficiently justified the jury in finding the degree was not moderate.

In determining whether the manner is reasonable and the degree moderate, the jury should consider all the facts and circumstances surrounding the punishment. They should especially consider: (1) The age of the child and whether he is old enough to understand the cause of the punishment and benefit by it; (2) The nature and degree of seriousness of the act which motivated the punishment; (3) The instrument used to inflict the punishment; and (4) The resulting injuries whether permanent or temporary and their degree of severity. We do not mean to suggest that these should be the only factors which the jury should consider. Each case should be decided on its own peculiar facts and circumstances. The factors mentioned above should be considered along with all the other evidence in the case in order that the jury may determine whether the manner is reasonable and the degree moderate.

The defendant also contends that since he was deprived of the

presumption discussed above, the prosecution did not have to prove the intent which is a necessary element of every assault. As we have heretofore mentioned, subdivisions 3 and 4 of section 94-605, do not specifically require intent in order to constitute an assault. There is an analogy here between these two assault sections and the crime of involuntary manslaughter.

In involuntary manslaughter, intent need not be proved, but rather the prosecution must prove gross negligence evidencing a disregard for human life or an indifference to consequences. State v. Powell, 114 Mont. 571, 576, 138 Pac. (2d) 949. Under the above assault sections the prosecution is only required to prove that the assault was committed wilfully, wrongfully and unlawfully.

It is up to the jury to decide whether the spanking or beating was wilful or wrongful. If it was reasonable in manner and moderate in degree they should not have to go any further but should acquit the defendant of the assault. If the spanking or beating was not reasonable in manner and moderate in degree then the jury must proceed to determine, beyond, a reasonable doubt, whether the person *in loco parentis* administered this unreasonable punishment wilfully, wrongfully, and unlawfully.

The jury in this case was properly left to decide this question without giving the defendant the benefit of a presumption that his actions were necessary and reasonable under the circumstances. Furthermore, the defendant is at least as well protected under our statute as he would be if he had the benefit of this presumption, for the prosecution must first show that his actions were unreasonable in manner and immoderate in degree. The proof of this is, in our opinion, more difficult than the proof required to overcome the presumption of reasonableness.

There are other specifications of error concerning the instructions, but we do not consider them prejudicial to the substantial rights of the defendant.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR, ANGSTMAN and BOTTOMLY concur.