433 P.2d 312

**The STATE of Utah, Plaintiff and Respondent,**

v.

**Richard Earl LANCASTER, Defendant and Appellant.**

**No. 10787.**

Supreme Court of Utah.

Nov. 1, 1967.

Sumner J. Hatch, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Gerald G. Gundry, Asst. Atty. Gen., Salt Lake City, for respondent.

NORSETH, District Judge:

This is an appeal by the defendant from a jury conviction of involuntary manslaughter which occurred on November 8, 1965. The action was brought under Section 76–30–5(2), Utah Code Annotated, 1953, which defines involuntary manslaughter as the unlawful killing of a human being without malice:

> \* \* \* in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection.

The facts in the case are briefly as follows:

That the deceased, Bobby Davis, was the five-year-old stepson of the defendant, and on November 8, 1965, the defendant inflicted punishment upon the person of the deceased child by beating him about the head and body with a leather belt approximately an inch and a half wide. The evidence further disclosed that the deceased child was in the bathroom and had been confined for several hours. He had been placed there by his parents for holding his breath, or as a punishment for pulling down bathroom curtains.

The defendant did not take the stand in his own behalf, but a conversation between the defendant and Captain Ferris Andrus of the Salt Lake County Sheriff's Office was admitted in evidence, without objection. The defendant stated that the deceased child was in the bathroom for quite some time. That he had been locked in the bathroom for disciplinary reasons. That there was no noise, but the defendant had

heard him splashing in the tub, and thought he was playing by holding his breath like he had done before. The defendant went to get a belt, and made a remark to his wife and a visitor that he was going to give the boy a whipping to stop him from holding his breath.

Upon entering the bathroom the defendant assumed the boy was holding his breath, and he picked him up and hit him with the belt. He did not recall how many times he hit the boy with the belt, and he continued to notice that the boy was not breathing, so he attempted artificial respiration, but to no avail.

He was asked about the bruises on the boy's testicles, and in response stated it could most likely have happened during the row with him in the bedroom and, when the boy ran away, he could have hit him in the back and this could have happened. He was asked if there was any obvious sickness on the part of the deceased child, and the defendant stated that there wasn't.

The child was rushed to the Cottonwood L. D. S. Hospital, Salt Lake County, Utah, where Dr. Horne determined the child was dead, and that he had died as a result of aspiration of vomitus in the lungs.

The defendant raises four points on appeal, as follows:

Point I: The evidence is insufficient to support the verdict.

Point II: The Court erred in denying defendant's motion to dismiss at the end of the State's case.

Point III: The Court erred in denying defendant's motion for a directed verdict at the close of all the evidence.

Point IV: The Court erred in refusing to give defendant's requested Instruction No. 6.

As to Points I, II and III raised by the defendant on appeal, this Court is of the opinion that there is no merit to the contentions of the defendant, and the Court properly refused to grant any of the three motions. Many cases are cited by the respondent to support its position, some of which are noted below.*

We are of the opinion also that the Court did not err in refusing to give defendant's requested Instruction No. 6, which is as follows:

Unless you find that chastising of a person of the age of the deceased is an act which under ordinary circumstances

---

* State v. Straight, 136 Mont. 255, 347 P. 2d 482 (1959).
  State v. Hunt, 2 Ariz.App. 6, 406 P.2d 208 (1965).
  State v. Cobo, 90 Utah 89, 60 P.2d 952 (1939).

Regina v. Towers, 12 Cox's Cr.C. 530 (1874).
State v. Wheeler, 70 Idaho 455, 220 P.2d 687 (1950).

may cause death, you must acquit the defendant.

██ It is obvious from the record in this case that the punishment administered by the defendant upon the deceased child was not an act committed under ordinary circumstances which may cause death, and, while recognizing that a parent or guardian may inflict punishment to a minor child, or may inflict punishment within the bounds of propriety, we feel that the jury in this case properly found the defendant guilty, and that the punishment administered by the defendant was without due cause and circumspection, and was in no manner ordinary punishment which a parent or a person in loco parentis would be entitled to administer to a child.

The defendant in this case stresses that Dr. Shelley Swift, pathologist, whose qualifications were not in dispute, performed an autopsy on the deceased; and that his findings were numerous bruises and superficial abrasions on the body confined to the right side of the face, right side of the forehead, right ear and buttocks, and a bruise in the scrotum and base of the penis. He determined that the cause of death was due to aspiration of vomitus in the lungs. He further testified that the trauma standing alone would not be sufficient to be disabling or incapacitating to a normal child of the age of the deceased, but he further testified that the aspiration of vomitus may be caused by emotional upset, and that a combination of factors—such as beating, chastising, crying, anger, fear—could all, in operation together, cause the death of the deceased. He stated further than an emotional status, combined with crying in a child of this age, accompanied by exhaustion, wherein the child exhausted himself of air, would have to breathe before he completely expelled the vomitus. That pure emotionalism will cause this.

In response to a question propounded by the respondent, as follows: "Do you have an opinion based on reasonable medical certainty as to the connection between the external trauma in this case and the vomitus in the bronchial tubes?" Dr. Swift testified as follows:

A. Yes, sir.

Q. Doctor, what is that opinion?

A. Well, it's not uncommon to find association between injury and vomitus, particularly in certain parts of the body. This is seen very commonly in children that they will vomit following injury of many types. Now, this is not only predicated by trauma, but, also, influenced by emotional disturbance and so on associated with the trauma. Now, obviously I can't point my finger to any finding in the autopsy showing connection between the two. This is merely an opinion.

Q. What is your opinion?

A. That there's a connection. A healthy, normal, child does not vomit and aspirate.

Q. Then correct me if I'm wrong in stating your opinion, Doctor: Is it your opinion that there is a connection between the external trauma that you observed and the aspiration?

(Objections by defendant and argument by prosecutor.
Objections overruled.)

A. The Witness: I believe there's a connection.

Q. (By Mr. Lewis): Doctor, do you have an opinion as to whether or not the cause of death relates to the external trauma?

(Objection by defendant overruled.)

A. The Witness: I believe that the death is due indirectly to the external trauma, not directly.

Q. Would you explain what you mean mean by "indirectly"?

A. If the cause of death, of course, is due to the aspiration of the vomitus, which I feel is indirectly connected with the external trauma, that the actual trauma itself is not sufficient to cause death (R. 82–84).

Dr. Swift further testified that all the factors of the trauma would not incapaci-

tate a normal child (R. 85); that aspiration of vomitus may be caused by any emotional upset (R. 86–87); that death would probably not result from that amount of trauma alone; and that if the child hadn't aspirated the vomitus, death would probably not have resulted from the trauma (R. 87).

Dr. Swift attributed the cause of death to the fact that a child crying must exhaust itself of air. In the instant case the child had to breathe before it had completely expelled the vomitus (R. 88).

On cross-examination, Dr. Swift testified that he could not state with medical certainty what caused the regurgitation (R. 92). On redirect he stated that it was his opinion that the cause of death resulted from aspiration of vomitus brought about by the trauma of the body (R. 93).

The defendant contends that the Court did not properly instruct as to the requirement of foreseeability, or probability of death or grievous body injury.

It is our opinion that there is no merit to such a contention. That from the facts in this case, had the defendant used any rhyme or reason in administering punishment to a five-year-old child in the manner in which he did, that severe bodily injury or death could be the result of such punishment, all of which was foreseeable to the defendant at the time the punishment was inflicted.

As to the charge contained in the Information, we hold that it was properly given, and as a matter of fact the Court gave defendant's requested Instruction No. 4, which is as follows:

The defense contends that the death of Bobby Davis was accidental and, therefore, excusable homicide. "Excusable homicide" is defined as follows: "The death of a human being is excusable and not unlawful when committed by accident or misfortune in the doing of any lawful act by lawful means and without unlawful intent."

The appellant relies strongly on the case of Witt v. Commonwealth, 1947, 305 Ky. 31, 202 S.W.2d 612. In this case the evidence shows that the deceased had been assaulted by the defendants, who were in a highly intoxicated condition. The deceased was also intoxicated, and he also had a bad heart. In this case the physician was neutral as to the cause of death, and stated that the death could have occurred from either intoxication or from the assault, but refused to express an opinion as to which caused the death. This is entirely different from the instant case and the testimony of Dr. Swift hereinbefore alluded to.

It is the opinion of this Court that the trial court did not commit error, and that the matter was properly submitted to the jury upon the law and the evidence pertaining to the case, and therefore the verdict of guilty must be and is hereby affirmed.

CROCKETT, C. J., and CALLISTER, TUCKETT and ELLETT, JJ., concur.

HENRIOD, J., having disqualified himself, does not participate herein.